| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------<br>In Re:<br><br>M. B̲ᴜʀᴛᴏɴ Mᴀʀꜱʜᴀʟʟ,<br><br>　　　　　　　　Debtor.<br>----------------------------------------------------------- | Hearing Date:　July 25, 2023<br>Hearing Time:　10:00 a.m.<br>Hearing Location:　Utica, NY<br>(via AT&T Conference Line)<br><br>Case No. 23-60263<br>Chapter 11 |

**UNITED STATES TRUSTEE'S MOTION UNDER 11 U.S.C. § 1104(a) TO APPOINT A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, TO APPOINT AN EXAMINER UNDER 11 U.S.C. § 1104(c), AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<u>AND RESERVATION OF RIGHTS</u>**

TO THE HONORABLE PATRICK G. RADEL, UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), by and through his counsel, hereby moves the Court for an Order under 11 U.S.C. § 1104(a) directing the appointment of a chapter 11 trustee for debtor M. Burton Marshall ("Debtor") or, in the alternative, directing the appointment of an examiner under 11 U.S.C. § 1104(c) (the "Motion"). Cause exists for the appointment of a chapter 11 trustee or, in the alternative, for the appointment of an examiner for the reasons set forth below.

## INTRODUCTION

Section 1104(a)(1) mandates that the Court appoint an independent chapter 11 trustee upon a sufficient showing of "cause," including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor, either before or after the commencement of the case, or similar cause. Here, "cause" exists as the Debtor admitted, under oath, that, for over thirty years, he borrowed millions of dollars, promising a return of 8%, only to use the newly borrowed funds to service existing debts and to finance his personal expenses. The Debtor induced more than a thousand people to give him money under the pretense of an investment opportunity he called the Eight Percent Fund. The Debtor also admittedly comingled his personal and business

1

funds, primarily using only a single bank account, Berkshire Bank #2301 ("Account 2301"). As a result, it is impossible to determine the Debtor's income and expenses; to evaluate possible preference transactions or to analyze a plan and disclosure statement.

The proper statutory remedy in a case such as this is for the Court to direct the United States Trustee to appoint an independent chapter 11 trustee as where the Court finds that cause exists, an order for the appointment of a chapter 11 trustee is mandatory. The scope of financial misconduct that has taken place, and the significant number of noteholders who invested in the Debtor's enterprise, make the appointment of an independent and disinterested party necessary to properly administer this estate.

In the alternative, the United States Trustee seeks the appointment of an examiner under section 1104(c) to examine the facts and circumstances that surround the Debtor's pre-petition financial misconduct, and to provide a recommendation to the Court upon completion of the examination.

## STATEMENT OF THE FACTS

1. On April 20, 2023, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"). The Debtor filed his schedules, statement of monthly income, and statement of financial affairs on the Petition Date. ECF No. 3.

2. An Official Committee of Unsecured Creditors was appointed by the United States Trustee on May 9, 2023. ECF No. 52.

3. The Debtor continues to operate his businesses and manage his properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The first meeting of creditors pursuant to 11 U.S.C. § 341 was scheduled to be held telephonically on May 22, 2023, but was adjourned to June 5, 2023, at which time the Debtor

appeared and testified under oath ("341 Meeting of Creditors"). The 341 Meeting of Creditors was continued to June 26, 2023. The transcript of 341 Meeting of Creditors is attached hereto as Exhibit 1.

5. The continued 341 Meeting of Creditors was held on June 26, 2023 at which time the Debtor appeared and testified further under oath ("Continued 341 Meeting of Creditors").

6. On Schedule A/B, the Debtor disclosed his interest in the following accounts and balances, Berkshire Bank: #2301, $396,637[1] balance; d/b/a MM Press #8128, $911 balance; d/b/a Marshall Tax Service #0522, $277 balance; d/b/a Marshall Moving #1246, $230 balance, d/b/a Marshall Storage #8136, $3,813 balance; d/b/a Marshall Maintenance #2218, $215 balance; d/b/a Marshall Rentals #8400, $1,532 balance plus tenant security deposit accounts. ECF No. 3.

7. On the Petition Date, the Debtor filed a Cash Management Motion, among other "first day" motions seeking expedited relief, including authorization to maintain his prepetition banking system. The Cash Management Motion identifies six accounts held at Berkshire Bank that are used in the Debtor's ordinary course of business to receive, hold, and distribute funds in addition to hundreds of segregated escrow accounts in which tenant security deposits are held. The Motion identifies Account 2301 as the Debtor's primary operating account. ECF No. 10.

8. The United States Trustee filed an Objection to the Cash Management Motion on May 8, 2023. ECF No. 54. The Cash Management Motion remains unresolved and is pending before the Court.[2]

---

[1] All amounts are rounded to the nearest dollar.
[2] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201, and reserves all rights, including the right to seek discovery in connection with this Motion.

## JURISDICTION AND STANDING

9. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), giving this Court jurisdiction to hear this Motion.

10. Pursuant to 28 U.S.C. § 586, the United States Trustee is generally charged with overseeing the administration of chapter 11 cases filed in this District. 28 U.S.C. § 586. Under Section 586 and Section 307 of the Bankruptcy Code, Congress charged the United States Trustee with broad responsibilities in chapter 11 cases and the standing to rise and be heard on any issue in any case or proceeding. 11 U.S.C. § 307.

## POINTS AND AUTHORITIES

**The Controlling Statutory Framework**

11. Under 11 U.S.C. § 1104(a)(1), the bankruptcy court must appoint a trustee if a movant, after notice and a hearing, demonstrates "cause." 11 U.S.C. § 1104(a)(1) ("[T]he court *shall* order the appointment of a trustee . . .") (emphasis added). Section 1104(a)(1) provides four non-exclusive circumstances constituting "cause" for the appointment of a trustee "including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . ." *Id*.

12. A finding of "cause" under Section 1104(a)(1) mandates the appointment of a trustee. *In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *8 (Bankr. S.D.N.Y. Mar. 31, 2015). The list of circumstances constituting "cause" for the appointment of a trustee is nonexclusive. *In re Altman,* 230 B.R. 6, 16 (Bankr. D. Conn. 1999), *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn. 2000).

13. "Cause" under subsection (a)(1) is not limited to the listed examples, such as gross mismanagement. Id. at 525. Some "factors that may constitute cause for the appointment of a

4

trustee include inappropriate relations between corporate parents and subsidiaries, misuse of assets and funds, inadequate record-keeping and reporting, and various instances of conduct found to establish fraud or dishonesty, lack of credibility, and lack of creditor confidence." *In re Futterman*, 584 B.R. 609, 616 (Bankr. S.D.N.Y. 2018).

14. Courts have discretion to determine whether cause exists, *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989), but once "cause" is found, "there is no discretion; an independent trustee must be appointed." Id. at 525; see also Oklahoma Ref. Co., 838 F.2d at 1136.

**Burden of Proof**

15. Though the Second Circuit has stated that the United States Trustee has the burden of showing by "clear and convincing evidence" that the appointment of a trustee is warranted, *Adams v. Marwil (In re Bayou Group, LLC)*, 564 F.3d 541, 546 (2d Cir. 2009), a recent Supreme Court decision casts doubt on that holding. In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, __ U.S. __; 134 S. Ct. 1749, 1758 (2014), the Court stated that "a preponderance of the evidence standard… is the 'standard generally applicable in civil actions.'"

16. The Supreme Court has consistently held that the presumptive standard of proof in civil cases is preponderance of the evidence unless a fundamental right is implicated or there is contrary Congressional direction. See *Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1923, 1934 (2016) (rejecting heightened burden for award of enhanced damages for patent infringement); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 34 S. Ct. 1749, 1758 (2014) (rejecting heightened burden for attorneys' fees award in patent litigation); *Grogan v. Garner*, 498 U.S. 279 (1991) (rejecting heightened burden for exceptions to discharge); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-390 (1983) (rejecting heightened burden for securities fraud).

## Cause Exists to Appoint a Chapter 11 Trustee for the Debtor
## Under 11 U.S.C. § 1104(a)(1)

**Support for Finding of Fraud**

17. A finding of fraud is amply supported by the record, including the Debtor's admission in his Declaration Pursuant to Local Bankruptcy Rule 2015-2 ("Declaration") that for over thirty years, he financed his businesses with personal borrowings pursuant to unsecured, thirty-day demand notes. ECF No. 7.

18. When questioned about the thirty-day demand notes at the 341 Meeting of Creditors, the Debtor acknowledged that he paid existing noteholders to whom he promised a return of 8% interest, by borrowing new funds from future noteholders to whom he likewise promised the same returns. Exhibit 1 at pp. 44-45.

19. The Debtor at the Continued 341 Meeting of Creditors admittedly commingled his personal and business income and expenses, using Account 2301 for deposits of his wages, social security, rental income, income from his other business, as well as funds from his investors. He likewise admitted using Account 2301 for his personal expenses as well as payments of obligations of his existing noteholders, including income tax payments, funeral expenses, charitable contributions, and car payments.

20. For nearly forty years, the Debtor engaged in a continuous cycle of depositing new money into his personal checking account while repaying noteholders and paying his personal expenses from the same individual checking account. Exhibit 1 at pp. 32-33.

21. In other words, the Debtor convinced the local community to invest in his real estate operations for a promised 8% return. The noteholders were paid their 8% interest with funds from new investors. But the Debtor's "business" was insolvent, unable to pay the debts as they came due without new funds from new investors. The Debtor's business model contains all the

6

hallmarks of a Ponzi scheme.

22. Many of the noteholders who filed proofs of claim ("POC") attached correspondence from the Debtor describing an Eight Percent Fund.  For example, s*ee* POC 23-1, p. 5, and POC 16-1, p. 5, attached hereto as Exhibit 2.

23. When questioned about his knowledge of the Eight Percent Fund, the Debtor denied having knowledge of this fund and denied approaching anyone about investing in such a fund.  The Debtor testified that he didn't know "where the word fund came from" … and "people would lend him money" by word of mouth.  Exhibit 1 at pgs. 38, 45, 46.  He stated that he did "not call it a fund" and that the word fund is "a mistake."  Exhibit 1 at pgs. 45-46.  In response to the question "did you present it as an investment opportunity," the Debtor replied that he "did not present it as an investment opportunity."  Exhibit 1 at pg. 39.

24. At the 341 Meeting of Creditors, dozens of Mr. Marshall's creditors challenged his statements denying knowledge of the Eight Percent Fund when in fact, the Debtor issued hundreds of letters referring to the Eight Percent Fund and potentially thousands of promissory note addenda adding additional funds to a noteholder's "additional investment."  As of the date of this Motion, more than two hundred claims have been filed by unsecured noteholders, many of which include documentation of the Eight Percent Fund and the "addendum to note."

25. Indeed, the Eight Percent Fund document (Exhibit 2), refers to noteholders as "investors."

> Mr. Marshall issues to the lender a promissory note for the amount of the loan at eight percent (8%) per annum. These funds can be treated as a savings account and earn interest, or some investors prefer a periodic check until the loan is paid in full.

26. While the Debtor claims that the noteholders simply loaned him money, and it was not an investment, the Debtor issued Form 1099-INT statements to his noteholders for interest,

7

causing the noteholders to pay taxes on interest payments they never received which they believed was being "reinvested." A sampling of Form 1099-INT statements received by noteholders is attached hereto as <u>Exhibit 3</u>. A letter to the Bankruptcy Clerk dated June 15, 2023 from one such noteholder further substantiates Debtor's 1099-INT scheme. ECF No. 100.

27.    In fact, the Debtor testified to this at the Continued 341 Meeting, explaining that he would issue a 1099-INT statement to noteholders whose accumulated interest was "reinvested" in their note. Stated differently, some noteholders were forced to pay income tax on the increase of interest on the principal amount of money borrowed by the Debtor, even though they never actually received a penny from him.

28.    A finding of cause based on fraud is warranted because: 1) the Debtor induced more than a thousand individuals to lend him millions of dollars, promising a return of 8% interest on a 30-day demand note; 2) the Debtor financed the Eight Percent Fund investment scheme by admittedly borrowing new sums of money to service existing debts; 3) the Debtor knew that he could not repay noteholders through his tax preparer and rental property businesses, yet he continued to borrow more money; and 4) the Debtor admittedly issued Form 1099-INT statements to noteholders in lieu of repaying them, causing them to incur greater losses by paying taxes on money they did not receive.

**<u>Support for Finding of Gross Mismanagement</u>**

29.    The Debtor claims in his Declaration that an increase in requests by noteholders for payments of principal and/or interest was a result of the Debtor losing approximately $600,000 in revenue related to his tax revenue business after having been hospitalized in the several months before he filed for bankruptcy protection. ECF No. 7.

30.    According to Debtor's 2022 Income Tax Return provided to the United States

8

Trustee, the Debtor grossed a total of $643,113 in revenue related to his tax preparation business. After expenses of $442,956, the Debtor had a net income, for the year, of $199,393 from his tax preparation business.

31. The Debtor reported on Schedules I and J, that his monthly net income from his businesses, with the primary source of income coming from the rental property business, is less than $20,000 per month. ECF No. 3.

32. The Debtor reported on Official Form 122B, Chapter 11 Statement of Current Monthly Income, that the average monthly net income he received during the six full months before he filed his bankruptcy case, was $42,669. *Id.*

33. The Debtor reported on Schedule E/F $90 Million in liabilities owed to unsecured noteholders, nearly all of them individuals, trusts, estates, associations from whom the Debtor issued thirty-day demand notes. *Id.*

34. Assuming, for discussion purposes, the principal balance of the Debtor's total liabilities is 50% of what was due as of the Petition Date, or $45 Million, at 8% per annum, the monthly debt service would be $300,000. Based on any reasonable assumptions, the Debtor's "cash flow from the business" could never support the debt service to his noteholders, even during its most profitable periods. ECF No. 7. The reality is that the Debtor could not support the debt service to existing noteholders without the ability to borrow new money.

35. The Debtor repeatedly responded to creditors' questions posed to him at the §341 Meeting of Creditors that his intention was to repay the noteholders with the increase of value of his real estate portfolio. However, the Debtor reported in his schedules that his interest in real estate has a value of less than $18 Million. Even if the property values doubled, which would be unrealistic, the Debtor could not come anywhere close to repaying his noteholders.

36. Yet, the Debtor continued to convince community members, their friends, and families to invest their money knowing that the value of his real estate portfolio was insufficient to cover the debt he owed to noteholders, putting his creditors at risk of recovery with every new dollar that he convinced them to invest.

**Other Factors for Finding Fraud**

37. While this case displays all the characteristics of a Debtor warranting the appointment of a trustee under § 1104 (fraud, dishonesty, incompetence, and gross mismanagement), the Court can look to other factors in determining whether there is cause. *In re Sillerman*, 605 B.R. 631 (Bankr.S.D.N.Y.2019) (citing *In re Futterman*, 584 B.R. 609, 616 (Bankr.S.D.N.Y.2018).

38. For example, in a case where an individual chapter 11 debtor remains in possession as a fiduciary of his own estate and for his creditors, there is a heightened concern of an inherent conflict of interest that may not otherwise exist in a corporate chapter 11. *In re Sillerman*, 606 B.R. 631, 647.

39. This is exactly the case here: the Debtor made payments of nearly $2 Million from January 1, 2023 through the Petition Date in various amounts to select noteholders. An independent trustee is necessary to review potential avoidance actions or fraudulent transfers; tasking the Debtor with the responsibility in bringing avoidance actions against those individuals which he chose to pay, is presents an unsurmountable conflict of interest. *See In re Soundview Elite, Ltd.*, 503 B.R. 571, 582 (Bankr. S.D.N.Y. 2014) ("It is wholly unrealistic to expect the Debtors' current management to appropriately investigate and prosecute potential breach of fiduciary duty actions and avoidance actions so long as current management, which will be the focus of much of the investigation, remains in place.").

10

40. Where a Debtor cannot fulfill his fiduciary duties to creditors, due to inherent conflicts, "cause" exists for the appointment of a chapter 11 trustee under Section 1104(a). The usual presumption in favor of allowing a chapter 11 debtor to remain in possession vanishes completely when management does not or cannot perform its fiduciary duties. *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985) ("[t]he willingness of courts to leave debtors in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.") (*quoting Wolf v. Weinstein,* 372 U.S. 633, 651 (1963)).

41. Moreover, in connection with the Cash Management Motion, according to in-court statements made by Debtor's counsel, the Debtor is unable to open new accounts compliant with 11 U.S.C. § 345 and United States Trustee Guidelines due to the notoriety that his bankruptcy filing has drawn in the community. The Debtor's bankruptcy estate should not be prejudiced due to the Debtor's inability to comply with these requirements. Instead, an independent fiduciary, lacking any stigma of fraud or dishonesty, could open bank accounts in compliance with the Bankruptcy Code and the United States Trustee Guidelines.

42. Absent a chapter 11 trustee, as the sole owner and manager of his businesses, the Debtor will remain in complete control of his assets following decades of deceptive business practices and fraudulent conduct. Congress has established only one remedy that can supplant management while allowing the case to remain in chapter 11 – the appointment of a trustee under section 1104(a).

### If a Trustee is Not Appointed, the Appointment of an Examiner is Appropriate as Mandated by Section 1104(c)

43.     Pursuant to 11 U.S.C. § 1104(c), the court shall order the appointment of an examiner at any time prior to confirmation of a plan:

> to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c)(2).

44.     The language in section 1104(c)(1) of the Bankruptcy Code calling for the appointment of an examiner if "such appointment is in the interest of creditors, any equity security holders, and other interests of the estate" reflects the language contained in section 1104(a)(2) with regard to the appointment of a trustee. An examiner "typically investigate[s] the debtor's business . . . , but do[es] not replace the debtor in possession in handling the day-to-day affairs of the business." *In re Gliatech, Inc., et al.*, 305 B.R. 832, 835 (Bankr. N.D. Ohio 2004), quoting *United States v. Schilling* (*In re Big Rivers Elec. Corp.*), 355 F.3d 415, 422 (6th Cir. 2004). A request for the appointment of an examiner must be supported by the given facts and circumstances. *See In re Gliatech*, 305 B.R. at 836 (citing *In re Mechem Fin. Of Ohio, Inc.*, 92 B.R. 760, 761 (Bankr N.D. Ohio 1988)).

45.     Accordingly, in the absence of a trustee, the bankruptcy court should order an examiner to perform the duties specified in § 1106(a)(3)(investigate the acts, conduct, assets, liabilities, financial condition, operation of the debtor's business, and any other matter relevant to the case or to the formulation of a plan); (a)(4) (file a statement of any investigation conducted

under paragraph 3 including causes of action available to the estate) and (b) (duties of an examiner include those that the court orders the debtor in possession not to perform).

46.     If a trustee is not appointed, alternatively, the facts and circumstances of this case compel the appointment of an examiner. The Debtor's schedules, statements, and testimony demonstrate the need for an investigation into the decades-old fraudulent scheme perpetrated by him. The Debtor's fixed, liquidated, unsecured debts exceed $90 Million. In a case where no trustee is appointed, a plan has not been confirmed, and the debtor's fixed debts exceed $5 million, and an investigation is appropriate, section 1104(c)(2) the Bankruptcy Code requires the appointment of an examiner. *See In re Residential Capital, LLC*, 474 B.R. 112, 121 (Bankr.S.D.N.Y.2012).

47.     The appointment of an examiner is necessary and would benefit all parties-in-interest in these cases. *See In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 566 (Bankr. D. Del. 2009) ("The Examiner performs his duties at the request of the Court, for the benefit of the debtor, its creditors and shareholders"); *In re Fibermark*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006) ("The benefit of appointing an independent examiner is that he or she will act as an objective nonadversarial party who will review the pertinent transactions and documents, thereby allowing the parties to make an informed determination as to their substantive rights"); *In re Apex Oil Co.*, 101 B.R. 92, 99 (Bankr. E.D. Mo. 1989) ("The Examiner is appointed to act as an independent party to review without monetary interest, transaction and documents"). Disclosure and transparency are fundamental tenants of bankruptcy, and a crucial requirement to the effective functioning of the federal bankruptcy system. *See In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010).

48.     An examiner must act as the term suggests, for the purpose of conducting an examination, not to act as a protagonist in the case. *See In re Loral Space & Communications*

13

*Ltd., et al.*, 313 B.R. 577, 583 (Bankr. S.D.N.Y. 2004), *rev'd*, 2004 U.S. Dist. LEXIS 25681. It is generally understood that an "investigation" pursuant to section 1104(c) is for the purpose of conducting a study "of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the debtor" of or by current or former management of the debtor, as the statute so clearly states. *See id*. at 585 (internal quotation marks omitted). The statute has been interpreted to provide for an investigation "of a particular transaction or series of transactions, in order to reveal ways and means to protect or augment the estate." *Id*. (citing *In re Gliatech*, 305 B.R. at 835).

49.     Under 11 U.S.C. § 1106(b), an examiner performs certain trustee duties set forth in 11 U.S.C. § 1106(a), which provides in relevant part that an examiner shall:

> (3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
>
> (4) as soon as practicable—
>
> (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and
>
> (B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates[.]

11 U.S.C. § 1106(a) (emphasis added). *See also The Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003) ("An examiner's duties include investigation of the debtor, the debtor's business, and 'any other matter relevant to the case or to the formation of a plan'").

50.     Here, an independent examiner will review pertinent transactions and documents

14

concerning the Debtor's financial affairs and file a report with various findings. The information contained in the examiner's report will serve as a road map for the parties by assisting them with the evaluation and pursuit of their respective rights. While the benefits of an examiner answers only to the bankruptcy court. Accordingly, if the Court does not appoint a trustee, an examiner should be appointed in this case.

## CONCLUSION

WHEREFORE, the United States Trustee requests the Court enter an order directing the appointment of a chapter 11 trustee for the Debtor, or in the alternative, enter an Order directing the appointment of an examiner, and for other relief as the Court deems appropriate.

Dated:  June 27, 2023                                             WILLIAM K. HARRINGTON
                                                                                  UNITED STATES TRUSTEE

*/s/ Erin P. Champion*
Erin P. Champion
Assistant United States Trustee
United States Trustee Department of Justice
Office of the U.S. Trustee
10 Broad Street, Suite 105
Utica, New York 13501
(315) 793-8191
erin.champion@usdoj.gov