So Ordered.

Signed this 28 day of July, 2023.



Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

M. BURTON MARSHALL,                          Chapter 11
                                             Case No. 23-60263-pgr
                              Debtor.
_____

APPEARANCES:

BARCLAY DAMON, LLP                  JEFFREY A. DOVE, ESQ.
*Attorney for Debtor*               BETH ANN BIVONA, ESQ.
125 East Jefferson Street
Syracuse, NY 13202

WILLIAM K. HARRINGTON               ERIN P. CHAMPION, ESQ.
UNITED STATES TRUSTEE
10 Broad Street, Room 105
Utica, NY 13501

OFFICIAL COMMITTEE                  STEPHEN A. DONATO, ESQ.
OF UNSECURED CREDITORS              SARA C. TEMES, ESQ.
*Bond, Schoeneck & King, PLLC*
One Lincoln Center
Syracuse, NY 13202

HARRIS BEACH, PLLC                  LEE WOODARD, ESQ.
*Counsel for Megan Marshall*

1

333 West Washington St, Suite 200
Syracuse, NY 13202

CAMPANIE & WAYLAND-SMITH, PLLC          TINA WAYLAND-SMITH, ESQ.
*Counsel for 34 Unsecured Creditors*
60 East State Street P.O. Box 70
Sherrill, NY 13461

LONGSTREET & BERRY, LLP          MARTHA L. BERRY, ESQ.
*Counsel for Gerard Locascio, Wanda Warren*
*Berry Living Trust, and Other Unsecured Creditors*
313 Montgomery Street
Syracuse, NY 13202

**MEMORANDUM-DECISION AND ORDER**
**DETERMINING NEED FOR EVIDENTIARY HEARING**
**REGARDING U.S. TRUSTEE'S MOTION TO APPOINT A TRUSTEE**

Presently pending before the Court is the United States Trustee's Motion to Appoint a

Chapter 11 Trustee pursuant to 11 U.S.C. § 1104 (a) or, in the alternative, to Appoint an Examiner

under 11 U.S.C. § 1104 (c). (Docket No. 106). The U.S. Trustee's motion was joined by the

Official Committee of Unsecured Creditors (Docket No. 140) and is supported by two groups of

unsecured creditors. (Docket No. 130, 132). The motion was opposed, in part, by the Debtor

(Docket No. 137) and Megan Marshall, the Debtor's wife and a creditor. (Docket No. 135). The

U.S. Trustee filed a declaration in further support of the motion on July 24, 2023. (Docket No.

150).

A hearing was held before this Court on July 25, 2023, in Utica, New York, with counsel

for the above-named parties appearing and being heard. Decision was reserved.[1]

For the following reasons, this Court finds an evidentiary hearing necessary.

---

[1] A telephonic status conference was held on July 28, 2023, at the request of Debtor's counsel, who asked to
supplement the record. That request is moot, as the information proffered by counsel played no role in this Court's
decision.

## JURISDICTION

This Court has core jurisdiction over the parties and the subject matter of this contested matter in accordance with 28 U.S.C. §§ 1334(b) and 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

For more than three decades, M. Burton Marshall has operated a series of businesses and owned scores of properties in a rural community located in Madison County, New York.  Mr. Marshall's endeavors included tax return preparation, self-storage, printing, insurance brokering, property maintenance, and real estate rental. (Docket No. 7, at ¶ 1-5).

Mr. Marshall filed a Petition for Relief under Chapter 11 of the Bankruptcy Code on April 20, 2023. (Docket No. 1).   He disclosed assets of $21,854,009.89 against liabilities of $92,746,873.06. (Docket No. 3-1, at p. 1).  The substantial majority of debt consists of unsecured promissory notes issued to individuals.  (Docket No. 3-1, at p. 84-414).

There appears to be no dispute that most of the creditors were friends, neighbors, customers, or clients of Mr. Marshall.  Numerous creditors believe they are victims of a wide-ranging, long-standing Ponzi scheme, wherein they were promised an 8% return for investing in a fund Mr. Marshall claimed to be maintaining. (Docket No. 100, 104, 125, 128, 130, 132).

Mr. Marshall denies any fraud and claims these were loans he intended to repay. (Docket No. 106-1, at p. 40-41, 45-47, 68-69, 131-32). He explains that his bankruptcy was "largely precipitated" by health problems, which resulted in lost revenue and increased demands from noteholders for payment. (Docket No. 7, at ¶ 6).

3

## DISCUSSION

Section 1104 of the Bankruptcy Code provides, in pertinent part, that, upon motion of the U.S. Trustee or a party in interest, and after notice and hearing, the Court "shall" order the appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" or if "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate…." 11 U.S.C. § 1104 (a)(1) & (2).

Ordinarily, a Chapter 11 debtor remains in control of the estate and appointment of a trustee is "the exception, rather than the rule." *In re Adelphia Commc'ns. Corp.*, 336 B.R. 610, 655 (Bankr. S.D.N.Y. 2006) (quoting *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989)). "There is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990); *see also In re Univ. Heights Ass'n, Inc.*, No. 06-12672, 2007 WL 316281, at *2 (Bankr. N.D.N.Y. Jan. 22, 2007)("The appointment of a § 1104 trustee is an extraordinary remedy.").

"[T]he standard for § 1104 appointment is very high...." *In re Smart World*, 423 F.3d 166, 176 (2d Cir. 2005). "The U.S. Trustee has the burden of showing by 'clear and convincing evidence' that the appointment … is warranted." *In re Bayou Grp., LLC*, 564 F.3d 541, 546 (2d Cir. 2009).[2]

---

[2] The U.S. Trustee argues that the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness*, 134 S. Ct. 1749 (2014) casts doubt on the continued validity of *Bayou Group*. The U.S. Trustee contends that preponderance of the evidence is the appropriate standard. This Court would reach the same conclusion under either standard and, as such, need not resolve this question.

### A. Appointment for "Cause" – Issues of Fact Regarding "Current Management"

The appointment of a trustee is authorized and, indeed, required upon a showing of "cause," which includes "fraud, dishonesty, incompetence or gross mismanagement of the debtor's affairs by current management…." 11 U.S.C. § 1104 (a)(1).  "Although the court's finding is limited to a factual determination [as to] whether 'cause' exists, a court is given wide latitude in determining whether the challenged conduct rises to the level of 'cause.'" *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007)(citing *Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc*., 828 F.2d 239, 241–42 (4th Cir. 1987)).

The court may consider both pre-petition and post-petition misconduct when deciding whether cause exists. *See* 11 U.S.C. §1104 (a)(1)(defining cause as "including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, *either before or after* the commencement of the case")(emphasis added); *see also 1031 Tax Grp.,* 374 B.R. at 86; *In re Anchorage Boat Sales, Inc*., 4 B.R. 635, 644–45 (Bankr. E.D.N.Y. 1980).

However, the court's inquiry is directed toward "current management." *See* 11 U.S.C. § 1104 (a)(1)(defining cause as including "fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor *by current management*")(emphasis added); *In re Bayou Grp*., 564 F.3d 547, at n. 3 ("The U.S. Trustee makes no attempt to impute the pre-petition fraudulent activity of Bayou's former management to Marwil. Such an imputation would be improper, as '[w]hen considering whether to appoint a trustee for cause, a court's focus is on the debtor's current management, not the misdeeds of past management.'")(quoting *1031 Tax Grp.*, 374 B.R. at 86); *see also In re Sletteland*, 260 B.R. 657, 672 (Bankr.S.D.N.Y.2001)("[O]n a motion for the appointment of a trustee, the focus is on the debtor's current activities, not past misconduct.").

5

### 1. Marshall as Management

The Debtor's Schedules and submissions disclose that he incurred more than $90 million dollars in unsecured debt (much of it from friends and neighbors) while operating small businesses (all but one of which are sole proprietorships) engaged in relatively modest pursuits (tax preparation, insurance sales, printing, property management) in a rural community in upstate New York.  (Docket No. 3-1, at p. 1, 84-414; Docket 7, at ¶ 1-5).

Although the precise pathway is obscure, there is no conceivable way the Debtor reached this destination absent massive fraud, dishonesty, incompetence, or gross mismanagement.

The Debtor's Schedules disclose net income not remotely sufficient to service the debt on the terms promised in the demand notes. (Docket No. 3-1, at p. 460-64; Docket No. 3-3).[3] Moreover, the sheer size of the shortfall establishes, *prima facie*, that whatever the Debtor's cashflow might have been during his peak profitable periods, no competent, honest manager of these businesses could possibly have believed the debt could be serviced on the promised terms, let alone find it prudent or proper to continue borrowing.

The Debtor claims he intended no fraud and believed he would eventually be able to repay his creditors through appreciation in the value of his real estate holdings. (Docket No. 106-1, at 40-41, 45-47, 68-69, 131-32).[4]  Even if accepted as true for present purposes, this admission is further evidence of incompetence and/or gross mismanagement, as no competent, honest person

---

[3] "When offered against a debtor, a debtor's schedules may be treated as judicial admissions." *In re Ridge Mountain, LLC*, No. 12-31090, 2012 WL 6681838, at *11 (Bankr. N.D.N.Y. Dec. 21, 2012); *see also In re Arcade Pub., Inc.,* 455 B.R. 373, 383 n.7 (Bankr. S.D.N.Y. 2011).

[4] The Debtor made these statements at his meeting of creditors.  The question of whether and under what circumstances a debtor's statements at their § 341 meeting can be considered evidence is unsettled. *Compare In re Johnson*, No. 6:18-AP-01106-MH, 2022 WL 16731090, at *3 (B.A.P. 9th Cir. Nov. 4, 2022); *In re Jost*, 136 F.3d 1455, 1459 (11th Cir. 1998); *with In re Avery*, 594 B.R. 655, 660 (Bankr. S.D. Miss. 2018).  This Court need not resolve this question.  If the Debtor is "current management," his Schedules and the other undisputed facts in the record, standing alone, establish cause under §1104 (a)(1).

could believe a debt load of this size could be serviced, let alone satisfied, by anticipated appreciation in real estate of the type owned by the Debtor.

The Debtor also attempts to deflect allegations of a Ponzi scheme by explaining that while proceeds of new loans may have been used to make payments on old loans, this should cause no concern because he deposited all of his personal and business income, and paid all of his personal and business expenses, from a single checking account. (Docket No. 106-1, at p. 44-45).  Even if this colossal commingling is credited as a defense to fraud, it constitutes additional evidence of incompetence and/or gross mismanagement.

If it was clear that the Debtor was still managing his businesses, this Court would find cause and appoint a trustee pursuant to §1104 (a)(1) without an evidentiary hearing. *See Ionosphere Clubs, Inc*., 113 B.R. at 167 ("Although in this case a full four day evidentiary hearing was conducted, in considering a motion for the appointment of a trustee, a bankruptcy court is not required to conduct a full evidentiary hearing."); *In re Casco Bay Lines, Inc*., 17 B.R. 946, 950 (B.A.P. 1st Cir. 1982)(affirming appointment of an 1104 trustee without an evidentiary hearing because the "bankruptcy court's order … had as its basis an analysis of existing, undisputed facts in the case which were a matter of record").

However, the situation is more complicated than that.

**2.  Algon's Arrival**

On May 22, 2023, approximately one month after filing for bankruptcy protection, the Debtor engaged Algon Capital, LLC, d/b/a Algon Group, to act as a financial advisor and chief restructuring officer.  The Debtor filed an application to approve that employment. (Docket No. 72).  As originally contemplated, the relationship was primarily advisory, with the Debtor remaining responsible for operating his businesses. (Docket No. 72, Exhibit A, at p. 1-2).

On July 18, 2023, the Debtor filed a reply in further support of the application to employ Algon. (Docket No. 134).   The Debtor, through counsel, explained that Algon's role had "significantly evolved." (Docket No. 134, at ¶ 3).   To wit, according to counsel, the Debtor had "ceded all decisional authority over the businesses … to Algon," which now had "full control over the businesses['] finances and bank accounts." (Docket No. 134, at ¶ 4, 5).

In a further submission filed July 24, 2023, the Debtor, through counsel, detailed Algon's performance of the management duties of the businesses and set forth controls put in place to ensure that Debtor's surrender of control is effective (*e.g.*, changing the office locks and not providing Debtor with a key, opening new financial accounts, revoking Debtor's signatory authority on existing accounts). (Docket No. 151, at ¶ 29).

At oral argument on July 25, 2023, Debtor's counsel represented that Algon had no connection with Debtor prior to the bankruptcy and was introduced to the Debtor by counsel.

Based on the foregoing, the Debtor argues that Algon is "current management" and contends there is no cause for an 1104 Trustee because there is no evidence of fraud, dishonesty, incompetence, or gross mismanagement *by Algon*.

The U.S. Trustee cites no evidence – and makes no allegation – of fraud, dishonesty, incompetence, or gross mismanagement by Algon.  (Docket No. 106). When questioned at oral argument, counsel for the U.S. Trustee and the Official Committee of Unsecured Creditors, expressed positive, albeit tentative, approval of Algon's management of Debtor's affairs, including its transparency and responsiveness to requests.  Committee counsel stated that the Committee had "no credibility issues with" Algon and believed the firm was "doing a good job."

Several parties, including the U.S. Trustee and Committee, objected to the Debtor's application to retain Algon. (Docket No. 129, 131, 133, 138).   However, the objections are

primarily focused on Algon's fee structure and do not substantively question the firm's impartiality, integrity, qualifications, or competency.

On the current record, this Court finds no basis on which to conclude that Algon has engaged in fraud, dishonesty, incompetence, or gross mismanagement and/or that any other aspect of Algon's management of the Debtor's affairs constitutes cause sufficient to justify the extraordinary remedy of appointing an 1104 trustee.

Accordingly, the question of whether to appoint a trustee under § 1104 (a)(1) turns on the identity of "current management."

### 3. Analysis

Congress included "current management" in §1104 (a)(1).

To give meaning to these words and respect to Congress's intent, courts should not appoint an 1104 trustee if the underlying cause can be attributed only to past management. *See 1031 Tax Grp.*, 374 B.R. at 86-90 (finding pre-petition change in management sufficient to defeat motion for 1104 trustee, given evidence that new management was "free from any taint associated with … prior management"); *In re Real Est. Partners, Inc.*, No. SA 07-13239 TA, 2007 WL 7025114, at *3 (Bankr. C.D. Cal. Nov. 20, 2007), aff'd, No. SA CV 07-1440 ODW, 2009 WL 3246619 (C.D. Cal. Oct. 5, 2009)("If the fraud, dishonesty or gross incompetence can be attributed to past management only, then the Court is not compelled to appoint a trustee."); *In re Microwave Prod. of Am., Inc.*, 102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989)("[T]he fact that prior management of the debtor is guilty of fraud, dishonesty, incompetence, or gross mismanagement does not necessarily provide grounds for the appointment of a trustee under section 1104(a)(1), as long as the court is satisfied that current management is free from the taint of prior management."); *In re Climate Control Mech. Servs., Inc*, 585 B.R. 192, 200 (Bankr. M.D. Fla. 2018)("Section 1104(a)

9

applies to misconduct of the 'current management.' However, the unrefuted evidence places all fault for the accounting deficiencies on Pressley, who is no longer a part of the 'current management.'"); *In re Express Grain Terminals*, LLC, No. 21-11832-SDM, 2022 WL 245421, at *12 (Bankr. N.D. Miss. Jan. 25, 2022)(declining to appoint 1104 trustee where "most, if not all, of the allegations of fraud, dishonesty, or gross mismanagement against [debtor] concern the actions of prior management").

As discussed above, there is no evidence before this Court of any fraud, dishonesty, incompetence, or gross mismanagement by Algon. Nor is there evidence of other cause sufficient to justify removing Algon from management of the Debtor's businesses.

The parties advocating for an 1104 trustee argue that the absence of such evidence should not prevent the appointment. They offer four (4) main arguments. This Court will address each argument in turn.

### a. Sole Proprietorship Status

The appointment proponents argue that because all but one of Debtor's businesses are sole proprietorships, a change in "management" is an oxymoron. In other words, they claim the Debtor essentially *is* these businesses and it is legally and practically impossible for him to be removed from management.

This appears to be an issue of first impression, as the parties did not cite, and this Court could not find, any published decisions ruling on the question of whether, as a matter of law, a sole proprietorship can "change management" in a pending Chapter 11 case.

However, two cases decided in the corporate context provide persuasive reasons for concluding that a management change can be practically effectuated by sole proprietorships in an

individual Chapter 11, notwithstanding any formal governance issues arising under non-bankruptcy law.

In *Real Estate Partners*, the debtor changed management by appointing an independent "responsible person." 2007 WL 7025114, at *1. The U.S. Trustee challenged this arrangement as contrary to California corporate governance law. *Id.* at *5. The Bankruptcy Court rejected the U.S. Trustee's argument on the grounds that, by operation of 11 U.S.C. § 1107 (a), the debtor in possession has the powers and duties of a trustee "subject to such limitations or conditions as the court prescribes" and, as such, "not only the assets of the estate but its governance as well are in *custodia legis*." *Id.*

The District Court affirmed this finding on appeal, noting that the U.S. Trustee's "highly technical argument ignores the very obvious fact that in federal bankruptcy proceedings, authority of management-*board of directors or otherwise*-is already significantly curtailed and often times subject to conditions and/or limitations set by the bankruptcy court." *In re Real Est. Partners, Inc*., 2009 WL 3246619, at *1 (emphasis added).

In *In re Blue Stone Real Est., Const. & Dev. Corp*., 392 B.R. 897, 902 (Bankr. M.D. Fla. 2008), the U.S. Trustee objected to the appointment of a chief restructuring officer ("CRO") and sought an 1104 trustee on the ground that the court lacked the "ability to enter an order imposing conditions or limitations under section 1107(a) that would, in effect, leave the [debtor] corporations without boards of directors."

The court rejected this argument, finding that "the Bankruptcy Code contemplates that the state law powers of a corporation's board of directors can be altered while the corporation is a debtor in bankruptcy." *Id.* at 903. The court concluded that "the plain meaning of section 1107(a) permits the Court to alter the powers of the Debtors' boards of directors (and managers, in the

cases of the Debtors that are limited liability companies) and impose requirements that will alleviate any concern, however unfounded, of a party in interest that [the] … CRO will be some toady or crony of [prior management] instead of an independent professional with absolute control over the Debtors." *Id.*

In sum, in *Real Estate Partners* and *Blue Stone*, the courts looked beyond the formal/technical governance structure to the practical reality of the debtors' operations in light of the significant authority of the bankruptcy court to regulate the power, duties, and governance of a debtor-in-possession.

In the present case, irrespective of whether the Debtor can technically be removed from "management" under applicable non-bankruptcy law, as a debtor-in-possession he is subject to the jurisdiction of this Court, which has the authority to regulate his actions, including his involvement in the businesses and access to assets of the estate. *See* 11 U.S.C. § 1107 (a); *see also generally In re Garden Manor Associates*, 70 B.R. 477, 478 (Bankr. N.D. Cal. 1987)("Section 1107 provides that these powers include the power to operate the debtor's business *unless the court orders otherwise*.")(emphasis added); *Matter of Gaslight Club, Inc*., 782 F.2d 767, 770 (7th Cir. 1986)("The case law demonstrates that the court has considerable authority to interfere with the management of a debtor corporation in order to protect the creditors' interests."); *In re K.G. IM, LLC*, 620 B.R. 469, 482 (Bankr. S.D.N.Y. 2020)(approving "consensual delegation of authority by the Debtors' former management to an independent [chief restructuring officer]").

Moreover, during the motion hearing, the Debtor, through counsel, indicated a willingness to stipulate to an Order giving judicial force to his divestiture of management responsibilities and consent to additional safeguards that might be proposed by other parties in interest and/or required by the Court.  This type of representation is enforceable by judicial estoppel. *See 1031 Tax Grp*,

374 B.R. at 88 ("[I]n response to continuing questions by the U.S. Trustee and the Court whether Okun has irrevocably transferred management authority, Okun's counsel agreed on the record in open court that Okun has irrevocably transferred management authority during the pendency of the chapter 11 cases, a representation which the Debtors contend and the Court concludes is enforceable by judicial estoppel.").

As such, provided the Debtor has, in fact, been divested of management duties and powers, any technical governance irregularity with that arrangement does not, without more, justify the extraordinary remedy of appointing an 1104 trustee.[5]

### b. Taint

The second argument advanced by the proponents of an 1104 trustee is that although there is no evidence of fraud, dishonesty, incompetence, or gross mismanagement by Algon, the firm is tainted by its association with the Debtor -- a "bad guy" who should not be permitted to choose his successor.

This Court must determine whether Algon is "free from the taint of prior management." *1031 Tax Grp.*, 374 B.R. at 86. "[H]eightened scrutiny" should be applied where, as here, new management was selected by tainted former management. *Id.* at 88.

However, the mere fact that former management selected new management does not irreparably taint new management. Rather, it shifts the burden to the debtor, or other parties opposing appointment, "to demonstrate that the new management is unconflicted by any association with the tainted members of the governing body that made the selection or appointment." *Id.; see also Real Estate Partners, Inc.*, 2007 WL 7025114, at *1.

---

[5] As discussed further below, if the record developed at the evidentiary hearing reveals that the Debtor has not been (or practically cannot be) divested of management responsibility, this Court's analysis would change.

In the present case, Debtor's counsel proffered that Algon had no prior association with the Debtor, was introduced to the Debtor by counsel, and is a disinterested, well-qualified, independent actor. In response, the advocates of appointment point to no evidence of wrongdoing by Algon, any relationship between Algon and the Debtor inconsistent with the representations of Debtor's counsel, or any reason to find "taint" beyond the fact that the Debtor selected Algon.

The advocates of appointment understandably consider it unseemly for the Debtor to be "allowed" to choose new management.

However, creating a rule that a management change initiated by the debtor invariably and irreparably taints new management would be a disincentive to a debtor voluntarily taking necessary and appropriate corrective action. *See Real Estate Partners*, 2007 WL 7025114, at *3 ("Taken to its logical conclusion, the U.S. Trustee's *per se* rule would mean that neither the board nor management of troubled companies could ever/would ever clean their own house as an alternative to the appointment of a trustee. The bad acts of former management would remain forever as an anchor around the debtor and would serve as a huge disincentive to either taking corrective action in the first place or to filing a reorganization proceeding at all.").

In addition, creating such a categorical rule would be inconsistent with the fact-specific, case-by-case approach consistently applied by courts when asked to appoint an 1104 trustee.

While the appointment advocates insist Algon wears a scarlet "D" because it was selected by the Debtor, the focus of this Court's inquiry concerns (a) whether Algon was involved with the prior misconduct/mismanagement and (b) whether Algon is disinterested and qualified to perform the management duties.

The record before this Court indicates no prior connection between Algon and the Debtor, let alone involvement by Algon with the Debtor's pre-petition endeavors, and no party has raised

any concern (or submitted any evidence giving rise to concern) regarding Algon's rectitude or aptitude. *See Real Est. Partners, Inc*., 2007 WL 7025114, at *4 ("In a case by case approach the Court can evaluate the crucial factors of whether there is a taint, whether prior management still has vestiges of control, whether the designated fiduciary is a known or an unknown and whether the designated fiduciary has the reputation and competence needed for the engagement.").

### c.  **Timing**

Third, the advocates of an 1104 trustee contend that the Debtor's purported divestiture of management responsibility was strategically timed to defeat or delay the effort to appoint an 1104 trustee and should therefore be viewed with suspicion.

The timeline does tend to support the conclusion that the management change was materially motivated by a desire to avoid appointment of an 1104 trustee.

The application to employ Algon was filed on May 23, 2023, approximately one month after the case was filed. (Docket No. 72).  The original engagement included a broad range of services, with Algon "report[ing]" to the Debtor and with the "day-to-day operation" being performed by the Debtor's "management." (Docket No. 72, Exhibit A, at p. 1-2).

The U.S. Trustee moved for appointment of an 1104 Trustee on June 27, 2023. (Docket No. 106).

On July 18, 2023, the Debtor filed a reply in further support of his application to approve the Algon engagement. (Docket No. 134). The Debtor, through counsel, explained that Algon's role had "significantly evolved." (Docket No. 134, at ¶ 3).  To wit, according to counsel, the Debtor had "ceded all decisional authority over the businesses … to Algon," which now had "full control over the businesses['] finances and bank accounts." (Docket No. 134, at ¶ 4, 5).  The Debtor provided an amended engagement agreement, dated July 14, 2023, in which the Debtor was

divested of all authority to manage the businesses and in which Algon was given full management control. (Docket No. 134, Exhibit A).

During the motion hearing, Debtor's counsel proffered that the evolution of Algon's role was based more on what it learned about the underlying businesses during the course of its engagement than it was motivated by litigation strategy.

This Court finds that the Debtor's motivation in making the change is less important than the change itself. In other words, whether the Debtor divested himself from management based on an honest acknowledgment that he was incapable of performing the duties or removed himself to avoid an 1104 trustee, the important question is whether he has, in fact, been removed from management. *See Blue Stone*, 392 B.R. at 905 (rejecting "the United States trustee's position that a proposed change of management following the filing of a still pending motion to appoint a Chapter 11 trustee is proscribed by section 1104(a)"); *Real Estate Partners*, 2007 WL 7025114, at *1 ("The fact that the change in management was obviously motivated by the imminent appointment of a receiver in district court, is just one such factor for the Court to consider.").

### d. Inadequate Safeguards

The proponents of an 1104 trustee assert that there are inadequate safeguards in place to ensure that the Debtor has, in fact, been divested of all management responsibilities. In other words, given the nature and extent of the Debtor's past conduct, along with the timing of the apparently strategic shift in management, the appointment advocates question whether the purported transfer of authority by the Debtor to Algon is (a) genuine, (b) sustainable, and (c) sufficient to safeguard the interests of the parties and facilitate reorganization.

These are legitimate and serious concerns, but they are not grounded in any evidence before the Court. The record currently contains a written agreement between Algon and the Debtor that

removes him from management, Debtor's counsel has cited objective steps taken to effectuate that removal, and the Debtor, through counsel, has offered to submit to entry of Orders memorializing the new structure.[6]

### e.  Need for an Evidentiary Hearing

The record presently before this Court indicates that Algon is currently managing the Debtor's businesses, Algon is free of any taint from the Debtor, and there are no grounds for establishing cause sufficient to remove Algon and appoint a trustee under § 1104 (a)(1).

However, given the nature and extent of the Debtor's pre-petition conduct, as well as the highly personal, closely-held nature of the underlying businesses, this Court finds that an evidentiary hearing is warranted. With respect to this aspect of the motion, the Court will be seeking evidence as to (a) whether there has actually been a change in management and (if so) whether there is (b) cause for concern regarding Algon's management and (c) whether sufficient safeguards can be established to ensure the Debtor remains divested of control and deprived of any opportunity to engage in fraud, dishonesty, incompetence, or gross mismanagement,

### B.  Appointment in the Parties' "Interests"– Questions of Fact Regarding Balancing

Even where there is no cause to appoint a trustee pursuant to § 1104 (a)(1), the court may consider whether the appointment is "in the interests of creditors, any equity security holders, and other interests of the estate …." 11 U.S.C. § 1104 (a)(2).[7]

---

[6] If evidence developed at the evidentiary hearing indicates that the Debtor is still materially involved in management and/or that there are no practical or legal safeguards sufficient to effectively guard against the Debtor doing so, this Court's analysis would change.

[7] The U.S. Trustee's motion explicitly discusses appointment of a trustee for cause under §1104 (a)(1). (Docket No. 106).  The Committee's joinder to the motion advocates for appointment under both §1104 (a)(1) and (a)(2). (Docket No. 140).  Appointment under §1104 (a)(2) was extensively addressed and explored at oral argument, with the U.S. Trustee orally adding a request for appointment under that section.  The Debtor, through counsel, objected to this amendment as inconsistent with due process.  Because this Court finds an evidentiary hearing necessary, any arguable issue of notice/due process is moot.  The Debtor has had, and will have, ample opportunity to present evidence and be heard regarding whether the §1104 (a)(2) factors are present.

"[T]he factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 527, n.11 (Bankr. E.D.N.Y. 1989). "The twin goals of the standard for the appointment of a trustee should be protection of the public interest and the interests of creditors …." *Ionosphere Clubs, Inc.*, 113 B.R. at 168 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 232 (1977), U.S.Code Cong. & Admin.News 1978, p. 61920); *see also 1031 Tax Grp.*, 374 B.R. at 91 ("In essence, § 1104(a)(2) reflects 'the practical reality that a trustee is needed.'")(quoting *Savino Oil*, 99 B.R. at 527 n. 11)).

Although judicial discretion is broad in this area, courts generally consider the following factors: (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects of the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of the creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of appointment. *See 1031 Tax Grp.*, 374 B.R. at 91 (collecting cases); *In re Sillerman*, 605 B.R. 631, 652 (Bankr. S.D.N.Y. 2019).

Here, if the Debtor remained in control, the elements of trustworthiness and past performance would toll heavily, if not dispositively, in favor of appointing an 1104 trustee. However, this Court's analysis is again impacted by the apparent change in management to Algon. The record lacks evidence to create questions about the trustworthiness and performance of *Algon*.

The advocates of appointment contend that an 1104 trustee is nevertheless appropriate under §1104 (a)(2) due to a complete lack of creditor confidence and trust.

The loss of creditor confidence and/or extreme acrimony is a factor to be considered by the Court under §1104 (a)(2). *See 1031 Tax Grp.*, 374 B.R. at 91(noting that "well-founded distrust and a lack of confidence in the Debtors, even with their new management … standing alone, would

18

point to the appointment of a chapter 11 trustee"); *see also In re Euro–Am. Lodging, Corp*., 365

B.R. 421, 432 (Bankr.S.D.N.Y.2007).

However, the lack of creditor confidence does not *per se* mandate the appointment of a

trustee. *See In re Marvel Ent. Grp., Inc*., 140 F.3d 463, 473 (3d Cir. 1998)("We expressly hold that

there is no *per se* rule by which mere conflicts or acrimony between debtor and creditor mandate

the appointment of a trustee."); *In re LHC, LLC*, 497 B.R. 281, 311 (Bankr. N.D. Ill. 2013)("This

Court finds that the mere acrimony between Wells Fargo and the Debtor is insufficient to warrant

the appointment of a trustee."); *In re Sundale, Ltd*., 400 B.R. 890, 910 (Bankr. S.D. Fla.

2009)("Neither loss of confidence, however reasonable, or acrimony, however bitter, necessarily

results in appointment of a trustee.").

Moreover, the lack of confidence must be rooted in objective fact, rather than mere personal

animus.  *See Sundale*, 400 B.R. at 910 ("[A] creditor's lack of confidence must be based on some

objective fact before a court should consider lack of confidence as a factor in considering

appointment of a trustee."); *In re CPESAZ Liquidating, Inc*., No. 9:20-BK-10554-DS, 2022 WL

2719642, at *7 (B.A.P. 9th Cir. July 12, 2022)("[A]s the bankruptcy court observed, 'feelings and

perceptions do not rise to the level of evidence establishing cause for what the [courts have]

recognized as an extreme remedy.'")(alteration in original); *In re Morningstar Marketplace, Ltd*,

544 B.R. 297, 305 (Bankr. M.D. Pa. 2016)("Lack of confidence must be more than a personal

dislike for management and should relate to the objectives of the case.").

Here, the only reason provided for the lack of confidence in *Algon* is the fact that it was

selected by the Debtor.  For the reasons outlined above, however utterly understandable the

creditors' dislike for, and distrust of, the Debtor may be, and however unseemly the creditors may

find it that the Debtor "picked" Algon, there is insufficient justification in the record for transferring those sentiments, and imputing a lack of confidence, to Algon.

Having said that, if the evidentiary hearing develops facts that would give objective cause for the creditors to lack confidence in Algon, then this Court's analysis will change.

In addition, the record is not well developed with respect to several other factors in the §1104 (a)(2) analysis. To wit, this Court has been provided with little information concerning the prospects of rehabilitation, the benefits anticipated from the appointment of a trustee, and the cost of appointment.

In sum, to adequately consider the interests implicated by §1104 (a)(2), this Court needs to assess the likely logistics of, and prospects for, rehabilitation and consider whether and how those logistics and prospects would be impacted by the appointment of an 1104 trustee, as opposed to allowing Algon to continue its work, subject to the oversight of the U.S. Trustee, the Committee, and the Committee's advisor.

Further development of the record is required for a proper determination of these §1104 (a)(2) factors. *See, e.g., Blue Stone*, 392 B.R. at 902, 904-905 (denying appointment of 1104 trustee because "[n]o party in interest was able to articulate any credible difference between the skill set of a Chapter 11 trustee and the skill set that Mr. Oscher would bring to the table as a CRO" and noting that appointment is appropriate "only if the protection afforded by a trustee is needed and expenses of a trustee would not be disproportionately higher than the value of the protection afforded")(citations omitted); *In re Bergeron*, No. 13-02912-8-SWH, 2013 WL 5874571, at *9 (Bankr. E.D.N.C. Oct. 31, 2013)(declining to appoint trustee because there had been "no showing that the benefits accompanying the appointment of a trustee outweigh the detriment to the bankruptcy estate"); *Morningstar Marketplace*, 544 B.R. at 305 ("A court is more likely to appoint

a trustee under § 1104(a)(2) when reorganization is not possible, and a Debtor's principal may be motivated to protect his own interests rather than the interests of creditors."); *In re Eurospark Indus., Inc*., 424 B.R. 621, 632 (Bankr. E.D.N.Y. 2010)(granting appointment because, *inter alia*, "the UST … established, by clear and convincing evidence, that a chapter 11 trustee is in the best interests of the estate because there is no genuine possibility of reorganization …."); *In re Euro-Am. Lodging Corp*., 365 B.R. 421, 432 (Bankr. S.D.N.Y. 2007)(appointing trustee based on finding that a planned sale was more likely to be completed by a trustee).

### CONCLUSION

For the foregoing reasons, this Court finds an evidentiary hearing necessary with respect to the United States Trustee's Motion to Appoint a Chapter 11 Trustee or, in the Alternative, to Appoint an Examiner. (Docket No. 106). A Scheduling Order will follow.

###