| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF NEW YORK<br>(UTICA DIVISION) | Hearing Date: September 20, 2023<br>Hearing Time: 10:00 a.m.<br>Hearing Location: Utica, New York |

In re:

M. BURTON MARSHALL
a/k/a BURT MARSHALL
a/k/a MILES BURTON MARSHALL

　　　　　　　　　　　　　　Debtor.

Case No. 23-60263-6-PGR

Chapter 11

**DEBTOR'S MOTION FOR ORDERS PURSUANT TO SECTIONS 105 AND
363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004:
(A) AUTHORIZING THE SALE OF ALL ASSET OF MILES B. MARSHALL,
INC., FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES; AND (B) AUTHORIZING DEBTOR TO CONSUMMATE
ALL TRANSACTIONS RELATED TO THE PROPOSED SALE**

　　　　M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall ("Debtor"), as debtor and debtor in possession[1], by and through his undersigned counsel, hereby moves this Court (this "Motion") for entry of Orders pursuant to Sections 105, and 363 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):  (A) authorizing the sale of substantially all of the assets of Miles B. Marshall, Inc., free and clear of all liens, claims, interests and encumbrances that could be asserted by, through or on behalf of the Debtor's estate, pursuant to the terms of an asset purchase agreement (the "Stalking Horse Bid"), a redacted copy of which is annexed hereto as Exhibit "A", and subject to higher and better offers; and (B) authorizing the Debtor to consummate all transactions related to the proposed sale.  In support of this Motion, the Debtor respectfully represents as follows:

---

[1] A motion seeking appointment of a trustee pursuant to 11 U.S.C. §1104 has been granted but as of the date of this motion, the order memorializing the appointment has not been entered and no trustee has been selected.

1

26974592.1

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory and rule-based predicates for the relief requested herein are Sections 105, and 363 of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules.

**BACKGROUND**

5. On April 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtor's Chapter 11 case (this "Chapter 11 Case").

6. As set forth in Footnote 1 above, as of the date of this filing, the Debtor, through the Algon Group ("Algon"), the Debtor remains in possession of his assets and continues to manage and operate his business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7. The appointment of a Chapter 11 trustee is expected to occur soon.

8. A committee of unsecured creditors was appointed in this case ("Committee").

9. The Debtor's businesses are operated as sole proprietorships, through "doing business as" ("dba") designations in the areas of tax preparation services, storage services, printing services, and rental services. The Debtor's six dba's include: M&M Press, Marshall Tax Service, Marshall Moving, Marshall Storage, Marshall Maintenance, and Marshall Rentals.

10. In addition, the Debtor owns 100% of the stock of an insurance agency, Miles B. Marshall, Inc. ("Company"). This corporation did not seek bankruptcy relief. However, through

26974592.1

this Motion, the Debtor is seeking authority to sell all of the assets of the business, free and clear of all liens, claim or encumbrances that could be asserted by or through his estate.

**The Debtor's Interest in the Company**

11. The Debtor's owns 100% of the Company.

12. The Company is an independent insurance agency with offices in Hamilton, NY. It is a New York corporation, was founded in 1962 and is classified under the Standard Industrial Classification Code 6411.

13. The Company provides both personal lines and commercial lines of insurance coverage to its clients.

14. The Company represents a variety of carriers, providing its clients with many coverage options including auto, home, business and workers compensation insurance.

15. The Company's assets include interests in over 5,000 policies stored in software or in hard copy; rights to incremental bonuses (whether annual, quarterly or monthly) issued by insurance carriers to the Company; premiums paid by the policyholders and goodwill. A complete description of the assets included in the proposed sale is set forth in the Stalking Horse Bid.

16. The value of the Company is diminishing as its clients move their business to other insurance agencies and as result of the expiration of the Errors and Omissions policy insuring the Company.

17. In consultation with the Committee and its professionals, Algon prepared a confidential information memorandum ("CIM"), prepared a confidentiality agreement and populated a virtual data room with information necessary for potential bidders to perform due diligence with respect to a potential sale.

26974592.1

18. Debtor's counsel prepared a form asset purchase agreement ("APA") for potential bidders to utilize, and a copy was placed in the data room.

19. After contacting multiple potential bidders, obtaining executed confidentiality agreements, circulating the CIM and providing access to the data room, four (4) bidders submitted qualifying bids. Algon then went back to each bidder requesting clarifications or modifications to the bids.

20. On Tuesday, September 12, 2023, Algon obtained the signed Stalking Horse Bid from the entity that Algon, in consultation with the Committee and its professionals, determined had submitted the highest and best offer (the "Stalking Horse Bidder").[2] A copy of the Stalking Horse Bid was provided to the Committee's professionals.

21. Among other things, the Stalking Horse Bid provides for a purchase price of One Million Three Hundred Twenty-Five Thousand Nine Hundred Eighty Dollars and Ninety Cents ($1,325,980.90) (the "Purchase Price"), which will be paid to Seller as follows:

    (a) Five Hundred Thousand Dollars ($500,000.00) via wire transfer of immediately available funds on the Effective Date;

    (b) Three Hundred Fifty Thousand Dollars ($350,000.00) via wire transfer of immediately available funds at the Closing (the "Closing Payment"); and

    (c) Four Hundred Seventy-Five Thousand Nine Hundred Eighty Dollars and Ninety Cents ($475,980.90) via a promissory note, delivered at the Closing.

All of the other qualified bids contemplated a much lower initial cash payment with further payouts dependent on future premiums received by the buyer.

---

[2] The identity of the Stalking Horse Bidder, as well as the identity of the other bidders, is confidential until the time for submission of overbids expires at noon on the September 15, 2023.

26974592.1

22. On Wednesday, September 13, 2023, Algon provided the other three (3) qualified bidders with a redacted copy of the Stalking Horse Bid (redacting the identity of the Stalking Horse Bidder) and providing each of the qualified bidders with the opportunity to submit an overbid no later than noon on September 15, 2023.

23. While the Company is not a debtor in this case, and its assets are not assets of the Debtor's estate, the Debtor is seeking Court approval for the sale for at least two (2) reasons: (A) the sale of the assets is free and clear of any liens, claims or encumbrances that could be asserted against the assets by or through the Debtor's estate, and (B) the Debtor has committed to complete transparency with respect to the monetization of his assets.

## RELIEF REQUESTED

24. By this Motion, the Debtor seeks the entry by this Court of an order (the "Sale Order"):

   i. approving the Stalking Horse Bid, or such other successful overbid as may be received on or before noon on September 15, 2023 (the "Successful Bid");

   ii. authorizing the sale of the Sale Assets pursuant to the Successful Bid free and clear of all liens, claims and encumbrances that could be asserted by or through the Debtor's estate, to the entity submitting the Successful Bid (the "Successful Bidder"); and

   iii. authorizing the Debtor to consummate the sale of the Assets to the Successful Bidder.

## THE PROPOSED SALE OF THE COMPANY'S ASSETS

25. The Debtor, Algon and the Committee have determined that an expeditious sale of the Sale Assets is in the best interests of his estate, his creditors and other parties in interest. In light of the continuing loss of customers and the imminent expiration of the Errors and Omissions policy, the Debtor requests that in accordance with Federal Rules of Bankruptcy Procedure

26974592.1

6004(h), the Sale Order be effective immediately upon entry and not be subject to a 14 day stay. The closing of the proposed sale is scheduled to occur no later than September 25, 2023.

## BASIS FOR RELIEF

### The Proposed Sale is in the Best Interests of the Debtor, his Creditors and his Estate

26. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor in possession is given these rights by Section 1107(a) of the Bankruptcy Code. *See* 11 U.S.C. § 1107(a). Moreover, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

27. Courts have uniformly held that approval of a proposed sale of property pursuant to Section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. See *e.g., In re Trans World Airlines, Inc.*, Case No. 01-00056, 2001 WL 1820326, at *11 (Bankr. D. Del. April 2, 2001); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the pre-confirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a Section 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a *good business reason* for completing the sale and the transaction is in good faith.") (emphasis added).

28. A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for

6

the estate, its creditors or interest holders. *See e.g., In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143 (3d Cir. 1986); *Cmte. of Equity Security Holders v. The Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983). In fact, the paramount goal in any proposed sale of property is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *The Official Committee of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*) 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the ... [debtors'] duty with respect to such sales is to obtain the highest price or greater overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

29. The Debtor submits that the proposed sale to the Successful Bidder satisfies the "sound business reason test" and represents a prudent and proper exercise of the Debtor's business judgment. The Debtor believes that a prompt sale of the Sale Assets free and clear of liens, claims and encumbrances that could be asserted by or through his estate, is the only way to maximize the value of the Debtor's estate.

30. The proposed sale is the only manner in which to monetize the Sale Assets and the Debtor's estate's interests in those assets.

31. All aspects of the proposed sale have been handled in good faith and at arms' length. While the Debtor is familiar with one or more of the bidders, including the Stalking Horse Bidder, all bidders had access to the same information and no bidder enjoyed any advantage over any other bidder.

**The Sale of the Assets Should be Approved**

32. Section 363(f) of the Bankruptcy Code[3] permits debtors, with court approval, to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

33. In the instant case, the Sale Assets are assets of the Company, and are to be sold free and clear of all liens, claims and encumbrances that could be asserted against the Sale Assets by or through the Debtor's estate. Accordingly, Section 363(f)(2) will be satisfied and the Company will be permitted to sell the Sale Assets free and clear of any liens, claims or encumbrances that could be asserted by or through the Debtor's estate.

**Purchaser's Good Faith**

34. Pursuant to Section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J. May 11, 2007); *Abbotts Diaries of Penn.*, 788 F.2d at 147.

---

[3] Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

35. The Debtor expects to be able to demonstrate that the sale to the Successful Bidder was negotiated in good faith. The Debtor submits that sale to the Successful Bidder will represent the highest and best offer for the Sale Assets.

36. Accordingly, the Sale Order should include a provision finding that the Successful Bidder for the Sale Assets is a "good faith" purchaser within the meaning of Section 363(m) of the Bankruptcy Code. The Debtor believes that providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtor for the Sale Assets and closing of the sale will occur promptly.

37. No previous request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Sale Order and grant such other relief as the Court may deem just and proper.

Dated:   September 14, 2023         **BARCLAY DAMON, LLP**
*Counsel for the Debtor and Debtor-in-Possession*

By*:      Jeffrey A. Dove*
Jeffrey A. Dove, Esq.
Office and Post Office Address
Barclay Damon Tower
125 E. Jefferson Street
Syracuse, New York 13202
Telephone:  (315) 413-7112
Facsimile:  (315) 703-7346
Email:  jdove@barclaydamon.com

26974592.1