So Ordered.

Signed this 20 day of September, 2023.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

M. BURTON MARSHALL,                                    Chapter 11
                                                       Case No. 23-60263-pgr

                                    Debtor.

_____

APPEARANCES:

BARCLAY DAMON, LLP                      JEFFREY A. DOVE, ESQ.
*Attorney for Debtor*                   BETH ANN BIVONA, ESQ.
125 East Jefferson Street
Syracuse, NY 13202

WILLIAM K. HARRINGTON                   ERIN P. CHAMPION, ESQ.
*United States Trustee, Region 2*
10 Broad Street, Room 105
Utica, NY 13501

OFFICIAL COMMITTEE                      STEPHEN A. DONATO, ESQ.
OF UNSECURED CREDITORS                  SARA C. TEMES, ESQ.
*Bond, Schoeneck & King, PLLC*          BRENDAN M. SHEEHAN, ESQ.
One Lincoln Center
Syracuse, NY 13202

HARRIS BEACH, PLLC                      LEE WOODARD, ESQ.
*Counsel for Megan Marshall*

1

333 West Washington St, Suite 200
Syracuse, NY 13202


CAMPANIE & WAYLAND-SMITH, PLLC          TINA WAYLAND-SMITH, ESQ.
*Counsel for 34 Unsecured Creditors*
60 East State Street P.O. Box 70
Sherrill, NY 13461

LONGSTREET & BERRY, LLP                 MARTHA L. BERRY, ESQ.
*Counsel for Gerard Locascio, Wanda Warren*
*Berry Living Trust, and Other Unsecured Creditors*
313 Montgomery Street
Syracuse, NY 13202

## MEMORANDUM-DECISION AND ORDER
## GRANTING MOTION TO APPOINT A TRUSTEE

Presently pending before the Court is the United States Trustee's Motion to Appoint a

Chapter 11 Trustee pursuant to 11 U.S.C. § 1104 (a) or, in the alternative, to Appoint an Examiner

under 11 U.S.C. § 1104 (c). (Docket No. 106).  The U.S. Trustee's motion was joined by the

Official Committee of Unsecured Creditors (Docket No. 140) and is supported by two groups of

unsecured creditors. (Docket Nos. 130, 132).  The motion was opposed, in part, by the Debtor

(Docket No. 137) and Megan Marshall (the Debtor's wife and a creditor). (Docket No. 135).  The

U.S. Trustee filed a declaration in further support of the motion. (Docket No. 150).

This Court heard oral argument on July 25, 2023, and reserved decision.  On July 28, 2023,

this Court issued a Memorandum-Decision and Order determining that an evidentiary hearing was

necessary. (Docket No. 160).[1]

On August 30, 2023, the parties filed a Stipulation of Facts (Docket No. 195) and

Statements of Contested Legal and Evidentiary Issues. (Docket Nos. 196, 197, 198, 199).

---

[1] On August 16, 2023, this Court ordered (Docket No. 188) that the evidentiary hearing include evidence and arguments regarding Debtor's Amended Application to Employ Algon Capital, LLC d/b/a Algon Group as Financial Advisors. (Docket No. 72). A separate Order will be entered regarding that application.

An evidentiary hearing was held on September 6 and 12, 2023, in Utica, New York. Documents were admitted into evidence by stipulation. (Docket Nos. 206 and 207). The following witnesses testified: Jon Scherr, the Debtor, Troy Taylor, Stephen Douglass, Ron Braver, and John Schuyler.

At the conclusion of the hearing, this Court heard argument and issued an oral ruling granting the motion and appointing a trustee pursuant to § 1104 (a)(1) of the Bankruptcy Code. This Memorandum-Decision and Order provides the reasons for that ruling.

## JURISDICTION

This Court has core jurisdiction over the parties and the subject matter of this contested matter in accordance with 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

Familiarity with this Court's prior Memorandum-Decision and Order (Docket No. 160), which sets forth the factual and procedural history, is presumed.

In sum, the parties stipulated to the following facts: The Debtor operates a series of sole proprietorships, including tax preparation, self-storage, printing, insurance brokering, property maintenance, and real estate rentals of over 100 properties (containing over 240 residential units) located in Central New York, principally in Madison County. (Docket No. 195, at ¶ 11). He is the sole shareholder of an insurance agency organized as a corporation, which has not sought bankruptcy protection. (Docket No. 195, at ¶ 14).

The Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code on April 20, 2023. (Docket No. 195, at ¶1).  He disclosed assets of $21,854,009.89 against liabilities of $92,746,873.06. (Docket No. 195, at ¶17).  Most of the debt consists of unsecured promissory notes issued to individuals, including friends, neighbors, customers, clients, and family members. (Docket No. 195, at ¶ 17).

Numerous creditors believe they are victims of a wide-ranging, long-standing Ponzi scheme,[2] wherein they were promised an 8% return for investing in a fund the Debtor claimed to be maintaining. (Docket No. 195, at ¶ 18).  The Debtor denies any fraud and claims these debts were loans he intended to repay. (Docket No. 195, at ¶ 19).

## DISCUSSION

### A.  Legal Standard

Section 1104 of the Bankruptcy Code provides, in pertinent part, that, upon motion of the U.S. Trustee or a party in interest, and after notice and hearing, the Court "shall" order the appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" or if "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate…." 11 U.S.C. § 1104 (a)(1) & (2).

A Chapter 11 debtor usually remains in control of its property and operations during a bankruptcy as a debtor-in-possession.  The appointment of a trustee is "the exception, rather than the rule." *In re Adelphia Commc'ns. Corp*., 336 B.R. 610, 655 (Bankr. S.D.N.Y. 2006) (quoting *In*

---

[2] "The term 'Ponzi scheme' is named after Charles Ponzi, who developed a 'remarkable criminal financial career' by convincing people to invest in his fake international postal coupons business." *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 179 n.1 (2d Cir. 2021)(quoting *Cunningham v. Brown*, 265 U.S. 1, 7, 44 S.Ct. 424, 68 L.Ed. 873 (1924)).

*re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989)). "There is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990); *see also In re Univ. Heights Ass'n, Inc.*, No. 06-12672, 2007 WL 316281, at \*2 (Bankr. N.D.N.Y. Jan. 22, 2007)("The appointment of a § 1104 trustee is an extraordinary remedy.").

"[T]he standard for § 1104 appointment is very high...." *In re Smart World*, 423 F.3d 166, 176 (2d Cir. 2005). "The U.S. Trustee has the burden of showing by 'clear and convincing evidence' that the appointment … is warranted." *In re Bayou Grp., LLC*, 564 F.3d 541, 546 (2d Cir. 2009).[3]

The court is required to appoint a trustee upon a showing of "cause." 11 U.S.C. § 1104 (a)(1). "Although the court's finding is limited to a factual determination [as to] whether 'cause' exists, a court is given wide latitude in determining whether the challenged conduct rises to the level of 'cause.'" *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007)(citing *Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239, 241–42 (4th Cir. 1987)).

The court may consider both pre-petition and post-petition misconduct when deciding whether cause exists. *See* 11 U.S.C. §1104 (a)(1)(defining cause as "including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, *either before or after* the commencement of the case")(emphasis added); *see also 1031 Tax Grp.,* 374 B.R. at 86; *In re Anchorage Boat Sales, Inc.*, 4 B.R. 635, 644–45 (Bankr. E.D.N.Y. 1980).

---

[3] The U.S. Trustee argues that the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness*, 134 S. Ct. 1749 (2014) casts doubt on the continued validity of *Bayou Group*. The U.S. Trustee contends that preponderance of the evidence is the appropriate standard. This Court need not resolve this question as the U.S. Trustee satisfied the clear and convincing evidence standard.

## B. Analysis

In its prior decision, this Court determined that cause sufficient to mandate the appointment of a trustee under §1104 (a)(1) had been established with respect to the Debtor. (Docket No. 160, at p. 6-7). That finding is incorporated herein.

In sum, it is undisputed that the Debtor incurred more than $90 million dollars in unsecured debt (much of it from friends and neighbors) while operating small businesses engaged in relatively modest pursuits (tax preparation, insurance sales, printing, property management) in a rural community in upstate New York. There is no credible or conceivable explanation for this circumstance that does not entail fraud, dishonesty, incompetence, and/or gross mismanagement by the Debtor.

However, as discussed in this Court's prior decision, the situation is complicated by the fact that the Debtor claims to have ceded control over his businesses to his financial advisor, Algon Capital, LLC, d/b/a Algon Group. The Debtor argues that Algon is "current management" and there is no cause for an 1104 trustee because there had been no showing of fraud, dishonesty, incompetence, and/or gross mismanagement *by Algon*.

This Court determined that an evidentiary hearing was needed to resolve this argument. *See 1031 Tax Grp.*, 374 B.R. at 86 ("When considering whether to appoint a trustee for cause, a court's focus is on the debtor's current management, not the misdeeds of past management.").

For the following reasons, this Court finds that it is not legally possible, or practically feasible, to separate the Debtor's businesses from the Debtor himself, as would be necessary to consider the businesses under new "management." As such, this Court finds clear and convincing evidence of cause sufficient to require the appointment of a trustee under 1104 (a)(1) of the Bankruptcy Code.

### 1. Legal Impossibility

This is a Chapter 11 filing by an individual debtor.  Although one might refer to the Debtor's various businesses as distinct entities or enterprises, "a sole proprietorship has no legal existence apart from its owner." *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007).

Furthermore, a sole proprietorship is not a "person" within the meaning of the Bankruptcy Code and cannot be a debtor in bankruptcy. *See In re Know Thy Self, Inc.*, No. 06-62628, 2006 WL 6589908, at *3 (Bankr. N.D. Ga. Mar. 17, 2006)("A proprietorship is not a person apart from the individual who owns it and cannot file bankruptcy in its own name."); *In re Drimmel*, 108 B.R. 284, 287 (Bankr. D. Kan. 1989), *aff'd*, 135 B.R. 410 (D. Kan. 1991), *aff'd sub nom. Unruh v. Rushville State Bank of Rushville, Mo.*, 987 F.2d 1506 (10th Cir. 1993)("Quite simply, the reason there is no separate legal definition for a sole proprietor's interest in his or her business is that none is necessary where only one person owns a business … '[t]he business and the proprietor are one.'"); *see also In re KRSM Properties, LLC*, 318 B.R. 712, 717 (B.A.P. 9th Cir. 2004); *In re Christenberry*, 336 B.R. 353, 356 (Bankr. E.D. Tenn. 2005*); In re Phillips*, No. 19-30566-KKS, 2020 WL 4001038, at *2 (Bankr. N.D. Fla. June 12, 2020).

In its initial decision, this Court noted authority for the proposition that a bankruptcy court may look beyond formal corporate governance structure to the practical reality of a debtor's operations when deciding whether to recognize a change in management. (Docket No. 160, at p. 10-13); *see, e.g., In re Real Est. Partners, Inc.,* No. SA 07-13239 TA, 2007 WL 7025114, at *5 (Bankr. C.D. Cal. Nov. 20, 2007), *aff'd*, No. SA CV 07-1440 ODW, 2009 WL 3246619 (C.D. Cal. Oct. 5, 2009); *In re Blue Stone Real Est., Const. & Dev. Corp.*, 392 B.R. 897, 902 (Bankr. M.D. Fla. 2008).

Upon further reflection and after additional briefing, evidence, and argument, this Court finds that this authority is not applicable to cases involving an individual debtor doing business as a sole proprietor. Recognizing a change in "management" of the Debtor would involve more than merely overlooking (or working around) a formality of corporate governance. It would require recognition of the sole proprietorships as entities in themselves, distinct from the Debtor. This is not possible or permitted under applicable law.

In addition, the Debtor is effectively arguing that he has been replaced as the debtor-in-possession, with Algon being empowered to manage the "businesses" as the true debtor-in-possession. This is an outcome outside the power of this Court to impose on the parties.

"[A] Chapter 11 reorganization contemplates only two possible scenarios for control of the debtor's business operations: a debtor in possession, or a debtor out of possession." *In re Casco Bay Lines, Inc*., 17 B.R. 946, 951 (B.A.P. 1st Cir. 1982). "The latter situation contemplates and mandates the appointment of a trustee." *Id.*

In other words, "either the debtor must be in control, or the court will authorize the appointment of a trustee to take control of the debtor's affairs." *Id.*; *see also In re Adelphia Commc'ns Corp*., 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006)("Using section 105(a) to appoint a fiduciary to act as a trustee shorn of the name, but with few other substantive differences, would be the exact kind of wrongful judicial action that the Second Circuit has forbidden. Section 1104 already provides for two kinds of fiduciaries, trustees and examiners.").

In sum, the Debtor's argument that he has allowed Algon to replace him as "management" (a) assumes a distinction between the Debtor and his businesses that is not recognized by the law

and (b) asks this Court to engineer a debtor-in-possession governance structure outside of the options authorized by the Code.  The Debtor's argument must therefore fail.

### 2.  Practical Infeasibility

In addition and in the alternative, even if one could accept the concept of Algon as new "management," the evidence establishes that the Debtor retains vestiges of control and that Algon cannot act as an independent fiduciary with respect to this Chapter 11 case.

### a.  Vestiges of Control

Evidence produced at the evidentiary hearing belies the assertion that the Debtor has been completely removed from control and causes concern that there could be a continuation of the pre-petition fraud, dishonesty, incompetence, or gross mismanagement.  *See Real Est. Partners, Inc.*, 2007 WL 7025114, at \*4 ("In a case by case approach the Court can evaluate the crucial factors of whether there is a taint, *whether prior management still has vestiges of control*, whether the designated fiduciary is a known or an unknown and whether the designated fiduciary has the reputation and competence needed for the engagement.")(emphasis added).

To wit, while the Debtor ceded check-writing and decision-making authority for some of his businesses to Algon, he remained in control of a separate bank account and solely responsible for his personal finances.  The Debtor testified that he was responsible for supervising the work of his employees.[4] He also continued to participate in the day-to-day operations of his businesses in worrisome ways, including handling cash, withdrawing funds from business accounts, accessing computer systems, and shredding documents.

---

[4] Although Algon's representative testified that he believed they were responsible for employee supervision, the lack of clarity on this critical question is of material concern. At a minimum, it shows that the lines of authority between Algon and the Debtor are not firmly established and/or well-understood.

### b. Algon as Fiduciary

In addition, even assuming *arguendo* that Algon can be considered new management, it must still be able to fulfill the fiduciary duties of a debtor-in-possession with impartiality and independence. *See In re V. Savino Oil & Heating Co., Inc*., 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989)("The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee.").

The Debtor bears the burden of showing that Algon "is unconflicted by any association with" him. *1031 Tax Grp.*, 374 B.R. at 88; *cf. also Real Estate Partners*, 2007 WL 7025114, at *4 (denying motion for 1104 trustee where new manager "has absolutely no connection to prior management, is in no way beholding to them and can serve as the kind of fiduciary that the case needs").

Although Algon is not complicit in, or tainted by, the Debtor's pre-petition conduct, Algon has not acted, and is not able to act, as an independent fiduciary.  Algon's loyalty lies with the Debtor.

Algon's retainer agreement requires the Debtor to indemnify Algon, mandates that Algon keep information confidential, and states that Algon will notify the *Debtor* if it discovers any "potential conflict of interest …." (Debtor's Exhibit 4).  Algon allowed the Debtor to handle cash (including making cash withdrawals from the businesses), and permitted him unfettered, unmonitored access to business records and a document shredder. Algon's representatives repeatedly consulted with Debtor's counsel (and followed his directives) regarding the manner, timing, and extent of disclosures to the Creditors' Committee and its financial advisor.

Most significantly, during an interview of the Debtor by HKA Global (the Committee's financial advisor), Algon's representative (on his own initiative) contacted Debtor's counsel and then instructed the Debtor not to answer certain questions, on the advice of counsel, presumably because counsel believed answering the questions would be against Debtor's interest.  Algon was also involved in the belated discovery and disclosure of estate assets, including a bank account opened by the Debtor post-petition and a safe containing valuables that was not disclosed on Debtor's Schedules.

Algon's attitude and actions have led to a breakdown in the trust and transparency necessary to sustain a productive working relationship with the other parties in interest.  In this regard, it is notable that the Creditors' Committee and two other groups of creditors vigorously support the U.S. Trustee's motion for an 1104 trustee.  The only creditor opposing the motion is the Debtor's spouse.

Algon sought to allay these concerns by insisting that it is working for the "estate" and asserting that it is not conflicted because all parties are seeking to maximize the distribution to creditors.  However, Algon's retention is proposed by, and its engagement is with, the Debtor, whose interests are not always aligned with his creditors.  Although one need not question Algon's intentions, one should not share its optimistic assessment of the invariable unity of its interests with those of the estate.

This divergence of interests is especially to be expected when recognizing that a significant source of recovery will likely be avoidance actions arising from a full investigation of suspected fraud.  The Debtor and Algon (as an entity retained by the Debtor and in regular consultation with his counsel) are not appropriately suited to pursue these possible paths to recovery. *See In re Sillerman*, 605 B.R. 631, 647 (Bankr. S.D.N.Y. 2019)("Tasking the individual debtor with the

11

responsibility of bringing avoidance actions against a family member or an entity in which the

debtor has a substantial interest may be daunting. Moreover, the temptation for self-dealing may

be heightened in the case of an individual debtor whose natural instinct is to protect his own self-

interest."); *In re Microwave Prod. of Am., Inc.*, 102 B.R. 666, 676 (Bankr. W.D. Tenn.

1989)("[B]ecause the debtor is not in a strong posture to pursue possible claims that may have

resulted from conflicts of interest and fraudulent transfers, a trustee would likely be able to

investigate claims that could result in additional sums of money coming into the estate."); *see also*

*Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 903 F.2d 445, 451 (7th Cir.

1990)("We are surprised that the bankruptcy judge has allowed Wabash to operate as debtor in

possession, when the clash of interests between creditors and its current management is so

obvious."); In re Ashley River Consulting, LLC, No. 14-13406 (MG), 2015 WL 1540941, at *10

(Bankr. S.D.N.Y. Mar. 31, 2015)(finding cause for an 1104 trustee where "the Debtors' and their

current management's post-petition conduct before this Court has fallen short of forthcoming").

In sum, while Algon is well-qualified to perform many of the services necessary for an

effective reorganization, its relationship with the Debtor precludes it from performing the duties

of an independent fiduciary with the requisite loyalty and accountability to the bankrupt estate.

Such a fiduciary plays an important part in any Chapter 11; it is vital in a case such as this – "a

large and messy bankruptcy that promises to get worse without a disinterested administrator at the

helm." *Matter of Cajun Elec. Power Co-op., Inc.*, 69 F.3d 746, 751 (5th Cir. 1995), *opinion*

*withdrawn in part on reh'g*, 74 F.3d 599 (5th Cir. 1996).

A trustee appointed pursuant to § 1104 (a)(1) will serve this critical role and provide the

necessary confidence to the Court and parties in interest. *See, e.g., In re Marvel Ent. Grp., Inc.*,

140 F.3d 463, 473 (3d Cir. 1998)("Having found that this unhealthy conflict of interest was

manifest in the 'deep-seeded conflict and animosity' between the Icahn-controlled debtor and the

Lenders and in the lack of confidence all creditors had in the Icahn interests' ability to act as

fiduciaries, the district court did not depart from the proper exercise of discretion when it

determined sufficient cause existed under § 1104(a)(1) to appoint a neutral trustee to facilitate

reorganization.").

## CONCLUSION

For the foregoing reasons, the United States Trustee's Motion to Appoint a Chapter 11

Trustee (Docket No. 106) is GRANTED pursuant to 11 U.S.C. §1104 (a)(1).[5]

### ###

---

[5] The proponents of this motion also argue that appointment of a trustee is warranted under § 1104 (a)(2).  This
Court's ruling renders that portion of the motion moot.