**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

M. BURTON MARSHALL,                                             Case No. 23-60263-PGR
a/k/a BURT MARSHALL,                                          Chapter 11
a/k/a MILES BURTON MARSHALL,

                               Debtor.

## NOTICE OF SALE TRANSACTION

**PLEASE TAKE NOTICE** that, on April 20, 2023, the above-captioned debtor and debtor in possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that on September 21, 2023, the United States Bankruptcy Court for the Northern District of New York (the "Court") signed an Order approving the appointment of Fred Stevens as Chapter 11 trustee (the "Trustee") of the estate of M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall.

**PLEASE TAKE FURTHER NOTICE** that on October 13, 2023, the Trustee, by and through his counsel, filed a motion (the "Motion") seeking entry of an order (the "Proposed Sale Procedures Order"), authorizing, among other things, the Trustee to implement expedited procedures to: (a) sell certain assets, including any rights or interests therein (collectively, the "De Minimis Assets") in any individual transaction or series of related transactions (each a "De Minimis Asset Sale") to a buyer with a sale price equal to or less than $25,000 as calculated within the Trustee's reasonable discretion, free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens"), without the need for further Court approval and with Liens attaching to the proceeds of such sale with the same validity, extent and priority as had attached to the De Minimis Assets immediately prior to the sale.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion is currently scheduled for November 7, 2023 at 11:30 a.m. (EST) before the Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Proposed Sale Procedures Order, the Trustee proposes to sell the De Minimis Assets set forth and described on Exhibit A attached hereto (the "Sale Assets"). Exhibit A provides: (a) the identification of the Sale Assets being sold; (b) the identification of the purchaser of the Sale Assets; (c) the identities of entities known to the Trustee as holding Liens or other interests in the Sale Assets, if any; (d) the purchase price and the material economic terms and conditions of the sale; (e) a copy of the sale agreement evidencing the sale of the Sale Assets, if applicable; and (f) any commission fees, or similar expenses to be paid in connection with such transaction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Proposed Sale Procedures Order, if the terms of a proposed sale or transfer are materially amended after transmittal of this notice but prior to the applicable deadline of any party entitled to receive this notice pursuant to the Proposed Sale Procedures Order (the "Sale Notice Parties") to object to such sale, the Trustee will send a revised Sale Notice (the "Amended Sale Notice") to the Sale Notice Parties, after which the Sale Notice Parties shall have an additional three (3) calendar days to object to such sale prior to closing such sale or effectuating such transaction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Proposed Sale Procedures Order, any recipient of this notice may object to the proposed transaction within the greater of (i) seven (7) calendar days of service of this notice, or (ii) three (3) calendar days of service of an Amended Sale Notice, as applicable. Objections: (a) **must be in writing**; (b) **must be received within seven (7) calendar days of service of this notice**; and (c) must be submitted by mail or email to counsel to the Trustee: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Fred Stevens (fstevens@klestadt.com) and Lauren C. Kiss (lkiss@klestadt.com). If you object, the Trustee may not sell the Sale Assets unless you and the Trustee consensually resolve the objection or upon further Court order approving the sale of such Sale Assets.

**PLEASE TAKE FURTHER NOTICE** if the Motion is approved by the Court and there are no objections to this Notice, then the Trustee intends to close on the Sale Assets immediately after entry of the Proposed Sale Procedures Order.

Dated: New York, New York
October 26, 2023

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: /s/ *Lauren C. Kiss*
Fred Stevens
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
          lkiss@klestadt.com

*General Counsel to Fred Stevens, the Chapter 11 Trustee of the estate of M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall*

2

## Exhibit A

| | |
|---|---|
| **Identification of the Sale Assets being Sold:** | All of the Seller's[1] right, title and interest in that certain printing business known as "M&M Press" (the "Business"), including the: <br> (A) Customer List; <br> (B) Good Will; <br> (C) Telephone Numbers; <br> (D) Inventory; and <br> (E) Equipment. |
| **Identification of the purchaser of the Sale Assets:** | The Ad Group Agency, Inc. (the "Buyer"), having an address at 114 Cottage Street, Suite 206A, Oriskany Falls, New York 13425 |
| **The identities of entities known to the Trustee as holding Liens or other interests in the Sale Assets, if any:** | As part of the sale, the Seller shall assign that certain lease of a Canon Copier 810, which is leased from Canon Financial Services, 14904 Collections Center Drive, Chicago, IL 60693-0149. |
| **The purchase price and the material economic terms and conditions of the sale:** | The Buyer shall pay to the Seller $20,000. In addition, Matthew B. Marshall, the Debtor's son who has managed the Business since in or around 2015 has agreed, as part of the sale, to release any and all claims that he has against the Debtor's bankruptcy estate. |
| **A copy of the sale agreement evidencing the sale of the Sale Assets, if applicable:** | A copy of the Asset Purchase Agreement of Sale, dated as of October 12, 2023 (the "Sale Agreement"), by and between the Trustee, as Seller, the Buyer, and Matthew B. Marshall is attached hereto as Exhibit 1. |
| **Any commission fees, or similar expenses to be paid in connection with such transaction:** | None. |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Agreement (defined herein).

**Exhibit 1 – Sale Agreement**

## ASSET PURCHASE AGREEMENT OF SALE

**AGREEMENT**, made this 12th day of October, 2023 by and between Fred Stevens, as Chapter 11 Trustee (the "Seller") of the Estate of M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall (the "Debtor"), having an address at c/o Klestadt Winters Jureller Southard & Stevens, LLP ("KWJS&S"), 200 West 41st Street, 17th Floor, New York, New York 10036-7203, The Ad Group Agency, Inc., having an address at 114 Cottage Street, Suite 206A, Oriskany Falls, New York 13425 (hereinafter referred to as "Buyer"), Matthew B. Marshall, having an address at PO Box 111, Hamilton, New York 13346 (hereinafter referred to as the "Releasing Party"), and KWJS&S, solely as escrow agent (the "Escrow Agent").

### RECITALS:

A. The Debtor is the owner of a certain printing business known as "M&M Press" (the "Business") located at 37 Milford St., Hamilton, New York 13346 (the "Premises"), which has been managed by his son, Matthew B. Marshall, since in or around 2015.

B. On April 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court").

C. The Bankruptcy Court entered a decision and order on September 20, 2023, directing the appointment of a Chapter 11 trustee to take control of the Debtor's assets [Dkt. No. 221], and on September 21, 2023, the Bankruptcy Court signed an order approving the United States Trustee's appointment of the Seller as trustee [Dkt. No. 225].

D. Since September 21, 2023, the Trustee/Seller has been in control of the Debtor's assets, including the Business, and has the exclusive right to operate, sell, use, or dispose of such property.

E. The Seller is desirous of selling to the Buyer and the Buyer is desirous of purchasing from the Seller the customer list owned by the Seller and used to generate sales in the Business (the "Customer List"), including but not limited to any good will associated with that Customer List and the Business (the "Good Will"), telephone numbers presently owned by the Seller in connection with the Business (the "Telephone Numbers"), paper and other supply inventory (the "Inventory"), the copiers and machinery, both owned and leased, tables, and other personal property located at the Premises (the "Equipment", and collectively with the Customer List, Good Will, Telephone Numbers, and Inventory, the "Business Assets").

**NOW THEREFORE**, in consideration of the mutual premises and covenants of the parties hereinafter set forth, it is agreed as follows:

The Recitals set forth above are an integral part of this Agreement and are incorporated herein by reference.

1. **SALE OF CERTAIN ASSETS:**

Seller shall sell, transfer, and deliver to the Buyer and Buyer shall purchase, on the hereinafter defined "Closing Date", all of Seller's right, title, and interest in and to the Business Assets as follows:

(A)  Customer List;

(B)  Good Will;

(C)  Telephone Numbers;

(D)  Inventory; and

(D)  Equipment.

Seller represents that as of the Closing Date, there are and will be no claims made by any landlord for the Debtor's use and occupancy of the Premises.

Seller shall use commercially reasonable efforts to forward all email received by the Business, the Debtor on behalf of the Business, and employees of the Business related to the Business to Buyer to an email address to be provided by the Buyer.

Upon full payment of the Purchase Price as hereinafter provided and defined, Seller shall assign, transfer, and convey its interest in the Business Assets to Buyer in accordance with the provisions of this Agreement, free and clear of any debts, mortgages, security interest, or other liens or encumbrances, subject to a lease agreement referenced in Section 6 below.

2. **PURCHASE PRICE:**

In consideration of the sale by Seller to Buyer of Seller's Business Assets, Buyer shall pay a total consideration of TWENTY THOUSAND and 00/100 ($20,000.00) Dollars to Seller, to be deposited into the escrow account of Escrow Agent KWJS&S on or before October 18, 2023 pursuant to the instructions set forth on Exhibit A, plus the waiver of any and all claims of Matthew B. Marshall against the Debtor's bankruptcy estate (collectively, the "Purchase Price").

3. **BANKRUPTCY COURT APPROVAL:**

This transaction is subject to the approval of the Bankruptcy Court. At or around the same time as entry into this Agreement, the Seller will file with the Bankruptcy Court a motion for approval of sale procedures related to this and similar sales of property, and a notice of this sale. This transaction is contingent upon the entry of an order approving the Seller's proposed sale procedures (a "Sale Procedures Order"), and the Seller's compliance with all terms of the Sale Procedures Order with respect to this transaction (collectively with entry of the Sale Procedures Order, the "Bankruptcy Sale Conditions").

4. **THE CLOSING AND CLOSING DATE:**

The Closing Date: The Closing Date will be deemed to occur immediately upon satisfaction of the Bankruptcy Sale Conditions at which time the Escrow Agent shall release the Purchase Price

to the Seller and the Bill of Sale in the form annexed hereto as Exhibit B (the "Bill of Sale") executed by the Seller to the Buyer.

5. **AUTHORIZING TRANSACTIONS PENDING CLOSING:**

The following shall/may occur prior to the Closing Date but only after execution of this Agreement and payment of the Purchase Price to the Escrow Agent:

a) All of the Debtor's employees involved in the operation of the Business including, but not necessarily limited to, Matthew B. Marshall and Terrance F. Chambrone, shall cease being employed by the Debtor effective October 13, 2023. Buyer may employ them on such terms as it deems appropriate.

b) Buyer may take possession of and remove the Business Assets from the Premises, and utilize them in the conduct of its business as if it is the lawful owner of them within thirty (30) days of the execution of this Agreement by all parties hereto subject to returning the Business Assets if the other terms and conditions of this Agreement are not fulfilled by any party hereto.

c) Buyer may generate new business and service customers on the Customer List as if the Closing Date has occurred.

d) Any accounts receivable or approved accounts payable generated on or prior to October 13, 2023, will be the assets or responsibility of the Seller, which it will continue to collect upon or pay as it is legally entitled or obligated. Any accounts receivable or accounts payable generated by the Business after October 13, 2023, will be the assets or responsibility of the Buyer.

6. **ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASE:**

The Seller's lease (the "Lease") of that certain Canon Copier 810 leased from Canon Financial Services, 14904 Collections Center Drive, Chicago, IL 60693-0149, shall be assigned to Buyer on the Closing Date and Buyer shall assume any and all responsibilities under the Lease. Buyer shall indemnify and hold Seller harmless from and against any and all claims, including all demands, losses, damages, fines, penalties, interest, judgments, as well as Seller's reasonable attorneys' fees, incurred in connection with Buyer's failure to satisfy all obligations under the Lease.

7. **ACKNOWLEDGEMENTS AND REPRESENTATION OF SELLER:**

A. All of the Business Assets are or will be owned by Seller at the time of the Closing free and clear of all liens and encumbrances.

B. Seller warrants and represents that neither the execution of this Agreement nor the consummation by Seller of the transaction contemplated by this Agreement will (i) conflict with, or result in a breach of, the terms, conditions or provisions of, or constitute a default, or result in a termination of, any agreement or instrument to which Seller is a party, (ii) violate any restriction to which Seller is subject, or (iii) constitute a violation of any applicable code, resolution, law, statute, regulation, ordinance, judgment, rule decree or order.

C.  Seller warrants and represents that no person or entity owns an option to purchase or maintains a right of first refusal to acquire the Business Assets described herein.

8. **ESCROW AGENT'S CLOSING OBLIGATIONS:**

At the Closing, Escrow Agent shall:

A.  Deliver the Purchase Price to Seller.

B.  Deliver to Buyer the Bill of Sale.

9. **FAILURE TO MEET BANKRUPTCY SALE CONDITIONS:**

If the Bankruptcy Sale Conditions do not occur, the Escrow Agent shall return the Purchase Price to Buyer, and the Bill of Sale to Seller, and the Seller shall have the right to retrieve some or all of the Business Assets from Buyer and Buyer shall reasonably accommodate such efforts.

10. **SURVIVAL:**

Each and all of the terms and conditions, covenants, restrictions, provisions, warranties and representations herein contained shall not survive the Closing, unless otherwise expressly stated in this Agreement to the contrary, including with respect to the assigned lease indemnity, and shall be deemed as merged in the transfer of title in said Business Assets or in the payment of the consideration therefore. Acceptance of the Bill of Sale by the Buyer shall be deemed an acknowledgment by the Buyer that the Seller has fully complied with all of his obligations with respect to this Sale and same shall not survive the delivery of the Bill of Sale, except those stated herein to survive Closing.

11. **NO ASSIGNMENT:**

The Buyer may not assign this Agreement or any of its rights hereunder without the express prior written consent of the Seller.

12. **NOTICES:**

All notices, demands or other communications required or desired to be given under this Agreement shall be written and shall be sent either by (i) prepaid registered or certified mail (return receipt optional) or (ii) by a nationally recognized overnight courier service, such as Federal Express or UPS delivery of which is to be evidenced by a signed receipt, addressed in either case to the other party as set forth below, or at such other address as shall be designated by Seller or Buyer by notice given in the manner herein provided. All notices, demands or communication shall be deemed given or rendered on the date (i) which is three (3) business days after it is mailed or (ii) that such notice, demand, or communication is actually delivered by such nationally overnight courier service. All notices shall be sent as follows:

(a)  To Seller

**Fred Stevens, Chapter 11 Trustee**
**c/o Klestadt Winters Jureller Southard & Stevens, LLP**
**200 West 41st Street, 17th Floor**

4

New York, NY 10036

or to such other address as the other party is notified in writing of,

with a copy to:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn: Lauren C. Kiss

(b) To Buyer

The Ad Group Agency, Inc.
114 Cottage Street, Suite 206A
Oriskany Falls, New York 13425
Attn: David Bean, President

or to such other address as the other party is notified in writing of,

with a copy to:

Centolella Law, P.C.
5793 Widewaters Parkway
Suite 210
DeWitt, New York 13214
Attn: Jason Centolella

(c) To the Releasing Party

Matthew B. Marshall
PO Box 111
Hamilton, New York 13346

or to such other address as the other party is notified in writing of,

with a copy to:

Centolella Law, P.C.
5793 Widewaters Parkway
Suite 210
DeWitt, New York 13214
Attn: Jason Centolella

(d) To the Escrow Agent:

**Klestadt Winters Jureller Southard & Stevens, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Attn: Lauren C. Kiss

13.  **MISCELLANEOUS:**

A.  This Agreement embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Agreement. Neither this Agreement nor any provisions hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

B.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

C.  The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions hereof. This Agreement may be executed in one or more counterparts all of which shall be deemed an original and all of which shall constitute one and the same Agreement.

D.  This Agreement shall not be binding or effective until properly executed and unconditionally delivered by Seller and Buyer.

E.  As used in this Agreement, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

F.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legal representative, successors and permitted assigns.

G.  The parties hereto and their attorneys have had full opportunity to review and participate in the drafting of the final form of this Agreement. Accordingly, this Agreement shall be construed without regard to any presumption or other rule of construction against the party causing the Agreement to be drafted.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the parties hereto have signed this Agreement the day and year written above.

**SELLER:**

FRED STEVENS, Chapter 11 Trustee of
the Estate of M. Burton Marshall a/k/a Burt
Marshall a/k/a Miles Burton Marshall

*Fred Stevens*
Fred Stevens, Chapter 11 Trustee

**BUYER:**

THE AD GROUP AGENCY, INC.

*David C Bean*
David Bean, President

**RELEASING PARTY:**

**MATTHEW B. MARSHALL:**

*[signature]*
Matthew B. Marshall

**ESCROW AGENT:**

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

*Fred Stevens*
Fred Stevens, Partner

# EXHIBIT A

## Klestadt Winters Jureller Southard & Stevens, LLP Wiring Instructions

| | |
|---|---|
| Bank: | Flagstar Bank |
| Address: | 950 Third Avenue NY, NY 10022 |
| Attention: | Marisol Figueroa |
| Tel.: | (646) 822-1504 |
| Routing #: | 026013576 |
| Swift code: | signus33 |
| A/C name: | Klestadt Winters Jureller Southard & Stevens, LLP Escrow Management Account |
| A/C #: | ████9870 |

# EXHIBIT B

# BILL OF SALE

In consideration of $20,000.00, plus the waiver of any and all claims of Matthew B. Marshall against the Bankruptcy Estate of M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall (the "Purchase Price"), the receipt and sufficiency of which consideration is acknowledged, Fred Stevens, as Chapter 11 Trustee of the Estate of M. Burton Marshall (the "Seller"), SELLS AND DELIVERS the following property to The Ad Group Agency, Inc., as buyer (the "Buyer"):

> All of the right, title and interest of Seller's assets used in the conduct of the M&M Press, including the Customer List, Good Will, Telephone Numbers, Inventory, and Equipment used by M&M Press (collectively, the "Business Assets"). (For the avoidance of doubt, the Business Assets shall not include any other assets of the Bankruptcy Estate of M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall that are unrelated to M&M Press held outside M&M Press's business premises including any real property or property associated with other business lines).

The Business Assets are sold pursuant to the terms of that certain Asset Purchase Agreement of Sale, dated as of October 12, 2023 (the "Sale Agreement"), by and between the Seller, the Buyer, and Matthew B. Marshall.

This Bill of Sale will be construed in accordance with and governed by the laws of the State of New York without regard to its conflicts of law principles. In the event of any inconsistency between the terms of this Bill of Sale and the terms of the Sale Agreement, the Sale Agreement shall control.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed as of this ___ day of November, 2023.

_____

FRED STEVENS, as Chapter 11 Trustee of the
Estate of M. Burton Marshall a/k/a Burt Marshall
a/k/a Miles Burton Marshall