**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

M. BURTON MARSHALL,                          Case No. 23-60263-PGR
a/k/a BURT MARSHALL,                         Chapter 11 (Main case)
a/k/a MILES BURTON MARSHALL, *et al.*,       Case No. 23-60723-PGR
                                             (Jointly Administered)

                              Debtors.

## JOINT PLAN OF LIQUIDATION PURSUANT TO
## CHAPTER 11 OF THE BANKRUPTCY CODE

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Fred Stevens
Lauren C. Kiss

*Counsel to Fred Stevens, Chapter 11*
*Trustee of the Estate of M. Burton*
*Marshall a/k/a Burt Marshall a/k/a Miles*
*Burton Marshall*

*Counsel to Miles B. Marshall, Inc., Debtor*
*and Debtor-in-Possession*

Dated:  New York, New York
        February 20, 2024

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARTICLE 1 – DEFINITIONS AND RULES OF INTERPRETATION ........................................1

    A. Definitions ...........................................................................................................1

    B. Rules of Interpretation........................................................................................9

ARTICLE 2 – PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED ..................10

    2.1. Claims Not Classified ......................................................................................10

        (a)  Administrative Expense Claims.................................................................10

        (b)  Priority Tax Claims....................................................................................10

        (c)  Professional Fee Claims.............................................................................11

ARTICLE 3 – CLASSIFICATION OF CLAIMS ...................................................................11

    3.1. Criterion of Class .............................................................................................11

    3.2. Class Categories ...............................................................................................11

ARTICLE 4 – TREATMENT OF CLASSES OF CLAIMS .....................................................12

    4.1. Class 1 (Secured Claims) ..................................................................................12

    4.2. Class 2 (Priority Non-Tax Claims) ...................................................................12

    4.3. Class 3 (Marshall Inc. Claims)..........................................................................12

    4.4. Class 4 (Marshall General Unsecured Claims)...................................................13

    4.5. Class 5 (Marshall Inc. Intercompany Interests) ................................................13

ARTICLE 5 – MEANS OF IMPLEMENTATION OF THE PLAN .........................................14

    5.1. No Substantive Consolidation .........................................................................14

    5.2. Plan Funding....................................................................................................14

    5.3. Appointment of Plan Administrator.................................................................14

(a) Appointment of Plan Administrator..................................................................14

(b) Bond.................................................................................................................14

(c) Governance ......................................................................................................15

(d) Succession Matters...........................................................................................15

(e) Funding of Plan Administrator's Activities .....................................................15

(f) Indemnification ................................................................................................15

5.4. Powers and Duties of Plan Administrator.......................................................16

(a) Powers and Duties ............................................................................................16

5.5. Establishment of Oversight Committee ..........................................................17

(a) Appointment of Oversight Committee..............................................................17

(b) Reimbursement of Costs and Expenses ...........................................................18

(c) Liability of Members of the Oversight Committee...........................................18

(d) Indemnification ................................................................................................18

5.6. Establishment of Reserves and Funds.............................................................18

(a) Administrative Reserve .....................................................................................18

(b) Disputed Claim Reserves .................................................................................18

5.7. Preservation of Causes of Action....................................................................19

5.8. General Disposition of Assets..........................................................................19

5.9. Exemption from Certain Transfer Taxes .........................................................19

5.10. Administrative Expense Claims Bar Date ......................................................20

5.11. Deadline for Filing Applications for Payment of Professional Fee Claims ............20

5.12. Execution of Documents to Effective Plan ....................................................20

5.13. Dissolution of Marshall Inc. ..........................................................................21

5.14. Post-Confirmation Reports and Fees ........................................................21

5.15. Official Committee ..............................................................................21

5.16. Insurance Preservation ........................................................................21

ARTICLE 6 – TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES ....21

6.1. General Provisions ...............................................................................21

6.2. Notice of Deemed Rejection/Rejection Bar ..............................................21

6.3. Compensation and Benefit Programs .....................................................22

ARTICLE 7 – CONDITIONS PRECEDENT ..............................................................22

7.1. Conditions Precedent to Confirmation of the Plan ...................................22

7.2. Conditions Precedent to the Effective Date ............................................22

7.3. Waiver of Conditions Precedent ...........................................................23

ARTICLE 8 – INJUNCTION; EXCULPATION ..........................................................23

8.1. General Injunctions .............................................................................23

    (a)  Injunction Against Interference with Consummation or Implementation of Plan.23

    (b)  Plan Injunction ...............................................................................23

    (c)  Release of Collateral .......................................................................24

8.2. Exculpation .......................................................................................24

8.3. No Bar to Claims Against Third Parties ...................................................24

8.4. All Distributions Received in Full and Final Satisfaction ............................24

8.5. No Modification ..................................................................................25

8.6. Discharge of Claims for Marshall Only ....................................................25

8.7. Extension of Time to Object to Marshall Discharge or Dischargeability .........25

ARTICLE 9 – PROVISIONS GOVERNING DISTRIBUTIONS ......................................25

9.1. Distributions by Plan Administrator ...........................................................................25

9.2. Indefeasibility of Distributions ...............................................................................25

9.3. Frequency of Distributions .....................................................................................26

9.4. Payment in U.S. Dollars..........................................................................................26

9.5. Clams in U.S. Dollars .............................................................................................26

9.6. Distributions Only on Business Days ......................................................................26

9.7. Transmittal of Payments and Notices .....................................................................26

9.8. Record Date for Distributions .................................................................................26

9.9. Unclaimed Distributions .........................................................................................27

9.10. No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars.........................................................................................................................27

9.11. Setoff and Recoupment .........................................................................................27

9.12. Payment of Taxes on Distributions Received Pursuant to the Plan........................28

9.13. Compliance with Tax Withholding and Reporting Requirements...........................28

9.14. Disputed Distribution............................................................................................28

9.15. Claims Administration Responsibility ...................................................................28

    (a)  Reservation of Rights.............................................................................................28

    (b) Objection to Claims...............................................................................................29

    (c)  Filing Objections..................................................................................................29

    (d) Determination of Claims ......................................................................................29

9.16. Treatment of Claims without Further Order of the Court.......................................29

    (a)  Certain Scheduled Claims.....................................................................................29

    (b) Late Filed Claims .................................................................................................29

9.17. Disputed Claims....................................................................................................30

9.18. Limitations on Funding of Disputed Claims Reserve ...............................................31

9.19. Tax Requirements for Income Generated by Disputed Claims Reserve .................31

9.20. Timing of Distributions on Disputed Claims Subsequently Allowed .....................31

9.21. No Payment or Distribution on Disputed Claims .....................................................31

ARTICLE 10 – PLAN INTERPRETATION, CONFIRMATION, AND VOTING ...................31

10.1. Procedures Regarding Objections to Designation of Classes as Impaired or
Unimpaired ..........................................................................................................................31

10.2. Withdrawal and Modification of Plan.......................................................................31

10.3. Governing Law ...........................................................................................................32

10.4. Voting of Claims.........................................................................................................32

10.5. Acceptance by Impaired Class...................................................................................32

10.6. Cram Down .................................................................................................................32

ARTICLE 11 – RETENTION OF JURISDICTION BY BANKRUPTCY COURT..................32

ARTICLE 12 – MISCELLANEOUS PROVISIONS.................................................................33

12.1. Headings ....................................................................................................................33

12.2. No Attorney's Fees ....................................................................................................33

12.3. Notices .......................................................................................................................33

12.4. Binding Effect............................................................................................................34

## INTRODUCTION

Fred Stevens, Chapter 11 trustee (the "<u>Trustee</u>") of the estate of M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall ("<u>Marshall</u>"), and Miles B. Marshall, Inc. ("<u>Marshall Inc.</u>," Marshall and Marshall Inc. each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") propose this joint plan of liquidation (the "<u>Plan</u>") pursuant to section 1121 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. The Plan constitutes a separate Plan for each Debtor and does not effectuate a substantive consolidation of the Debtors or their bankruptcy estates (collectively, the "<u>Estates</u>," each an "<u>Estate</u>").

## ARTICLE 1 - DEFINITIONS AND RULES OF INTERPRETATION

### A. <u>Definitions.</u>

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, shall have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined. A term that is used in the Plan and not defined herein, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, shall have the meaning set forth therein. Any reference contained in the Plan to a particular exhibit, paragraph or article shall be deemed to be a reference to an exhibit, paragraph or article of the Plan.

1.1     "<u>Administrative Expense Claim</u>" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(2) including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estates and winding down the Debtors' operations during the Chapter 11 Cases, (b) any indebtedness or obligations incurred or assumed by the Debtors or the Trustee in the ordinary course of business in connection with the wind-down of the Debtors' operations during the Chapter 11 Cases, (c) any Professional Fee Claims, whether fixed before or after the Effective Date, (d) any costs and expenses for the management, maintenance, preservation, sale, or other disposition of any Assets incurred during the Chapter 11 Cases, and (e) any fees or charges assessed against the Debtors' Estates under 28 U.S.C. § 1930.

1.2     "<u>Administrative Expense Claims Bar Date</u>" shall have the meaning set forth in Section 5.10 of the Plan.

1.3     "<u>Administrative Reserve</u>" means the reserve fund established by the Trustee as provided in Section 5.6 hereof, to fund post-confirmation costs and expenses of the Plan Administrator to complete the wind-down of the Debtors' Estates, which shall be funded by the Debtors' Estates.

1.4     "<u>Allowed</u>" means, when referring to a Claim, a Claim against one or more of the Debtors (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules and as to which no objection to the allowance thereof has been interposed within the applicable period of

limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or the Claims Objection Deadline, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order, or (ii) a Claim which has been or hereafter is listed by one or more of the Debtors in their Schedules as liquidated in an amount and not disputed, contingent, or listed as zero (iii) a Claim that is allowed by this Plan or Final Order of the Bankruptcy Court. For purposes hereof, an "Allowed Claim" shall include any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, provided, however, that (i) a Claim allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered an "Allowed" Claim hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) an "Allowed" Claim shall not include interest, penalties, or late charges arising from or relating to the period from and after the Marshall Petition Date or Marshall Inc. Petition Date, as applicable, unless otherwise specifically provided for in the Plan; and (iii) an "Allowed" Claim shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

**1.5** "Assets" means any and all property of the Estates, including without limitation all property and other interests identified in section 541(a) of the Bankruptcy Code. Without limiting the foregoing, Assets shall include all of the Debtors' tangible and intangible property, wherever located and whether acquired prior to or after each of the Marshall Petition Date or Marshall Inc. Petition Date, as applicable, including the real estate Properties, Cash, intellectual property, accounts, tangibles, intangibles, Causes of Action (including Avoidance Actions), together with the proceeds and products, replacements and accessions thereof.

**1.6** "Avoidance Action" means any Causes of Action to avoid or recover a transfer of property of any of the Estates or an interest of any of the Debtors in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

**1.7** "Ballot" means the form distributed to a Holder of an Impaired Claim on which it is to be indicated whether such Holder accepts or rejects the Plan.

**1.8** "Bank Litigation Claims" means potential claims and causes of action against certain banking institutions as a result of Marshall's alleged questionable prepetition business practices.

**1.9** "Bank Litigation Counsel" means the firm retained by the Trustee and/or the Plan Administrator, in consultation with the Official Committee and Oversight Committee, to pursue the Bank Litigation Claims.

**1.10** "Bank Litigation Fund" means any funds received on account of the prosecution of the Bank Litigation Claims, after payment of the fees and expenses owed to the Bank Litigation Counsel.

**1.11** "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Chapter 11 Cases.

2

**1.12** "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Northern District of New York wherein the Chapter 11 Cases are pending.

**1.13** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, and any Local Rules of the Bankruptcy Court, as amended, in effect and applicable to the Debtors' Chapter 11 Cases.

**1.14** "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**1.15** "Cash" means legal tender of the United States of America.

**1.16** "Causes of Action" means any and all Claims, rights, actions, chose in action, suits, and causes of action belonging to any of the Debtors or their Estates and any and all liabilities, obligations, covenants, undertakings and debts owing to any of the Estates, whether arising prior to or after the Marshall Petition Date or Marshall Inc. Petition Date, as applicable, and in each case whether known or unknown, in law, equity or otherwise, including Avoidance Actions.

**1.17** "Chapter 11 Cases" means the jointly administered cases concerning the Debtors under chapter 11 of the Bankruptcy Code, administered under Lead Case Number 23-60263 (PGR) in the Bankruptcy Court.

**1.18** "Claim" means, as defined in Bankruptcy Code section 101(5): (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.19** "Claim Transfer Document" shall have the meaning set forth in Section 9.8 of this Plan.

**1.20** "Claims Bar Date" means the earliest applicable deadline established by any Order of the Bankruptcy Court for the filing of a Proof of Claim by a Creditor, including (i) in the Marshall Bankruptcy Case the *Order Fixing Deadlines to File Proofs of Claim* [Docket No. 34] entered on April 27, 2023, as amended by the *Stipulation and Agreed Order Extending the Deadline for Creditors to File Proofs of Claim* [Docket No. 179] entered on August 14, 2023, and (ii) in the Marshall Inc. Bankruptcy Case the *Order Fixing Deadlines to File Proofs of Claim* [Docket No. 7] entered on September 27, 2023.

**1.21** "Claims Objection Deadline" means, unless otherwise extended by Order of the Court, the first Business Day that is 180 days after the Effective Date.

**1.22** "Class" means a category of Claims described in Article 3 of the Plan.

**1.23**  "Collateral" means any property or interest in property of any of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.24**  "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.25**  "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

**1.26**  "Creditor" means any Person holding a Claim against one or more of the Debtors or, pursuant to section 102(2) of the Bankruptcy Code, against property of one or more of the Debtors, that arose or is deemed to have arisen on or prior to the Marshall Petition Date or Marshall Inc. Petition Date, as applicable, including, without limitation, a Claim against any of the Debtors of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

**1.27**  "Debtors" means (i) M. Burton Marshall, a/k/a Burt Marshall, a/k/a Miles Burton Marshall and (ii) Miles B. Marshall, Inc.

**1.28**  "Deficiency Claim" means that portion of any Allowed Claim held by a Holder of a Secured Claim that exceeds the value distributed on account of such Allowed Claim pursuant to the treatment of such Allowed Claim in Class 1 in the Plan.

**1.29**  "Disallowed" means, when referring to a Claim (including a Scheduled Claim), or any portion of a Claim, which has been disallowed or expunged by a Final Order.

**1.30**  "Disclosure Statement" means the disclosure statement for the Plan, and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

**1.31**  "Disclosure Statement Approval Order" means the Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

**1.32**  "Disputed" means, with respect to a Claim against a Debtor, the extent to which the allowance of such Claim is the subject of a timely objection, complaint or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice, or determined by a Final Order.

**1.33** "Disputed Claims Reserve" means the segregated accounts established by the Plan Administrator, as necessary, consistent with Section 9.17 of the Plan.

**1.34** "Distribution" means any distribution made pursuant to the terms of this Plan.

**1.35** "Distribution Agent" means the entity, if any, to be engaged by the Plan Administrator to make Distributions under the Plan. If no such entity is engaged, then the Distribution Agent shall be the Plan Administrator.

**1.36** "Distribution Date" means any date on which a Distribution is made to Holders of Allowed Claims under this Plan. The first Distribution shall occur as soon as practicable on or after the Effective Date.

**1.37** "Distribution Record Date" shall have the meaning set forth in Section 9.8 of this Plan.

**1.38** "Effective Date" shall mean the first day on which the Confirmation Order has become a Final Order and on which all of the conditions to the Effective Date in the Plan have been satisfied or waived.

**1.39** "Estates" means the Marshall Bankruptcy Estate and Marshall Inc. Bankruptcy Estate.

**1.40** "Fee Application Deadline" shall have the meaning set forth in Section 5.11 of the Plan.

**1.41** "Final Order" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

**1.42** "General Unsecured Claim" means any Unsecured Claim against Marshall that is not an Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim. For the avoidance of doubt, any Deficiency Claim shall be a General Unsecured Claim.

**1.43** "Holder" means any person that holds a Claim against a Debtor.

**1.44** "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.45** "Insurance Policies" means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against a Debtor, its officers, directors, trustees, or any other Person.

**1.46** "Intercompany Interest" means the Interests of the Marshall Bankruptcy Estate in 100% of the equity in Marshall Inc. and the Marshall Inc. Bankruptcy Estate.

**1.47** "Interest" means means any common stock, ordinary shares, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor (in each case whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security).

**1.48** "Lien" means a "lien" as defined by section 101(37) of the Bankruptcy Code.

**1.49** "Marshall Bankruptcy Case" means the bankruptcy case concerning Marshall, pending under Case No. 23-60263.

**1.50** "Marshall Bankruptcy Estate" means Marshall's bankruptcy estate created under section 541 of the Bankruptcy Code as of the Marshall Petition Date and the property described in section 1115(a) of the Bankruptcy Code.

**1.51** "Marshall Inc. Bankruptcy Case" means the bankruptcy case concerning Marshall Inc., pending under Case No. 23-60723, which is being jointly administered with the Marshall Bankruptcy Case.

**1.52** "Marshall Inc. Bankruptcy Estate" means Marshall Inc.'s bankruptcy estate created under section 541 of the Bankruptcy Code as of the Marshall Inc. Petition Date.

**1.53** "Marshall Inc. Claim" means an Unsecured Claim against Marshall Inc., other than an Administrative Expense Claim or a Priority Tax Claim.

**1.54** "Marshall Inc. Governmental Bar Date" means March 24, 2024, the deadline for governmental units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in respect of a prepetition claim against Marshall Inc., as set forth in the *Order Fixing Deadlines to File Proofs of Claim* [Docket No. 7] entered on September 27, 2023.

**1.55** "Marshall Inc. Petition Date" means September 26, 2023, the date upon which Marshall Inc.'s bankruptcy case was commenced.

**1.56** "Marshall Inc. Post-Confirmation Estate Fund" means all Cash, and/or other assets that may be liquidated and reduced to Cash, of Marshall Inc. as of the Effective Date or thereafter by the Plan Administrator.

**1.57** "Marshall Petition Date" means April 20, 2023, the date upon which Marshall's bankruptcy case was commenced.

**1.58** "Marshall Post-Confirmation Estate Fund" means all Cash, and/or other assets that may be liquidated and reduced to Cash, of the Marshall Bankruptcy Estate as of the Effective Date or thereafter by the Plan Administrator, except for that included in: (a) any Disputed Claim Reserve, and (b) the Administrative Expense Reserve.

**1.59** "Official Committee" means the official committee of unsecured creditors appointed by the U.S. Trustee to represent the interests of unsecured creditors in the Marshall Bankruptcy Case.

**1.60** "Oversight Committee" means the committee appointed as of the Effective Date pursuant to the Plan and as identified in the Plan Supplement.

**1.61** "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or governmental unit or subdivision thereof or other entity.

**1.62** "Plan" means this Plan and any exhibits or schedules annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

**1.63** "Plan Administrator" means the person or entity appointed in accordance with the Plan and as identified in the Plan Supplement.

**1.64** "Plan Administrator Agreement" means the agreement between the Trustee, Marshall Inc. and the Plan Administrator in a form and substance reasonably satisfactory to the Official Committee, which shall be filed with the Bankruptcy Court as part of the Plan Supplement.

**1.65** "Plan Proponents" means the Trustee and Marshall Inc.

**1.66** "Plan Supplement" means the supplement to the Plan that includes documents and instruments required to implement the Plan, including, without limitation, the Plan Administrator Agreement, which shall be filed with the Bankruptcy Court not later than ten (10) days before the deadline to object to confirmation of the Plan established by the Disclosure Statement Approval Order.

**1.67**    "Post-Confirmation Expenses" means the administrative expenses accruing after the Effective Date, including without limitation, all fees and expenses of the Plan Administrator, and any professionals retained by the Plan Administrator.

**1.68**    "Priority Non-Tax Claim" means an Unsecured Claim against Marshall, other than an Administrative Expense Claim, a Priority Tax Claim, or a General Unsecured Claim, which is entitled to priority in payment under sections 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.69**    "Priority Tax Claim" means an Unsecured Claim or a portion of an Unsecured Claim of a governmental unit against Marshall which is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.70**    "Professional Fee Claim" means any Claim of a Professional retained in the Chapter 11 Cases pursuant to sections 327 or 1103 of the Bankruptcy Code, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.71**    "Professionals" means those professional persons, including lawyers, financial advisors, and accountants and other professionals retained by the Debtors, the Trustee or the Official Committee.

**1.72**    "Proof of Claim" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases by the applicable Bar Date.

**1.73**    "Properties" means those parcels of fee-owned, real property listed on Schedule "A" to that certain listing agreement between the Trustee and Keen-Sumit Capital Partners, LLC, which was filed at Docket No. 259-2.

**1.74**    "Records" means the Debtors' original hardcopy files and records stored at the building located at 11 Maple Drive in Hamilton, New York, as may be removed and stored by the Trustee or Plan Administrator, and electronic data on numerous computer servers, operating systems, databases, hard drives and other storage devices and media.

**1.75**    "Sale" means the Trustee's intended sale of the Properties, free and clear of liens, claims, and encumbrances pursuant to Order(s) of the Bankruptcy Court.

**1.76**    "Scheduled Claim" means a Claim that is listed in one or more of the Debtor's Schedules.

**1.77**    "Schedules" means a set of schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statement of financial affairs, and other schedules and statements filed by each of the Debtors pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

8

**1.78** "<u>Secured Claim</u>" means a Claim secured by a Lien, as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a judicial lien as that term is defined at section 101(36) of the Bankruptcy Code, against any property of an Estate, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**1.79** "<u>Tax Information</u>" shall have the meaning set forth in Section 9.12(a) of this Plan.

**1.80** "<u>Tax Information Request</u>" shall have the meaning set forth in Section 9.12(b) of this Plan.

**1.81** "<u>Unclaimed Distribution</u>" means any Distribution that is unclaimed after ninety (90) days following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a valid address.

**1.82** "<u>Unsecured Claim</u>" means any Claim which is not secured by an offset or "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estates, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property. For the avoidance of doubt, the term "Unsecured Claim" includes any Deficiency Claim.

**1.83** "<u>U.S. Trustee</u>" means any and all representatives and employees of the Office of the United States Trustee for Region 2, Northern District of New York, Utica Division.

**1.84** "<u>Voting Agent</u>" means the Stretto, Inc., the entity retained by the Trustee to perform certain solicitation and other administrative services in connection with this Plan.

**1.85** "<u>Voting Record Date</u>" means the date that is three (3) business days before the hearing to consider approval of the Disclosure Statement.

**1.86** "<u>Wind-Down Budget</u>" shall have the meaning set forth in Section 5.3(e) of this Plan.

**B. <u>Rules of Interpretation.</u>**

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or

substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to a Person as a Holder of a Claim includes that Person's successors and assigns; (e) unless otherwise specified, all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan; (f) the words "herein", "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan.   To the extent that the Plan is inconsistent with the Disclosure Statement or provisions of the documents comprising the Plan Supplement, unless such document specifically states otherwise, the provisions of the Plan shall be controlling.

### ARTICLE 2 - PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED

**2.1**    **Claims Not Classified.**

No class is designated for Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims.

(a)    Administrative Expense Claims.

All Allowed Administrative Expense Claims, other than Professional Fee Claims, shall be paid by the Plan Administrator from the Marshall Post-Confirmation Estate Fund or Marshall Inc. Post-Confirmation Estate Fund, as applicable, in full, in Cash, in such amounts as are incurred in the ordinary course of the liquidation of the Debtors, or in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtors' liquidation, or (c) as may be agreed upon between the holder of any such Administrative Expense Claim and the Plan Administrator.   In the event there exists any Disputed Administrative Expense Claims on the Effective Date, the Plan Administrator shall at all times hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Administrative Expense Claims. Administrative Expense Claims are not Impaired by the Plan.

(b)    Priority Tax Claims.

On the Effective Date, or as soon thereafter as is reasonably practical, in full and final satisfaction of such Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Priority Tax Claim to be paid from the Marshall Post-Confirmation Estate Fund or Marshall Inc. Post-Confirmation Estate Fund, as applicable, or (b) such other treatment as to which the Plan Administrator and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing.   In the event any Disputed Priority Tax Claims exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all

Disputed Priority Tax Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.  Priority Tax Claims are not Impaired by the Plan.

      (c)   <u>Professional Fee Claims</u>.

The Plan Administrator shall pay all Professional Fee Claims from the Marshall Post-Confirmation Estate Fund or Marshall Inc. Post-Confirmation Estate Fund, as applicable, in the amount Allowed by the Bankruptcy Court as soon as practicable after entry of a Final Order awarding such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.11 hereof.  In the event any Disputed Professional Fee Claims exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Professional Fee Claims until such dispute is resolved consensually or by order of the Bankruptcy Court. Professional Fee Claims are not Impaired by the Plan.

## ARTICLE 3 - CLASSIFICATION OF CLAIMS

**3.1**    <u>**Criterion of Class**</u>.

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class or Classes to the extent that the remainder of the Claim qualifies within the description of the different Class or Classes.

**3.2**    <u>**Class Categories**</u>.

The following classes of Claims are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

| Class | Claim | Treatment | Status | Voting Rights |
|-------|-------|-----------|--------|---------------|
| Class 1 | Secured Claims | Plan § 4.1 | Unimpaired | Presumed to Accept |
| Class 2 | Priority Non-Tax Claims | Plan § 4.2 | Unimpaired | Presumed to Accept |
| Class 3 | Marshall Inc. Claims | Plan § 4.3 | Unimpaired | Presumed to Accept |
| Class 4 | Marshall General Unsecured Claims | Plan § 4.4 | Impaired | Entitled to Vote |
| Class 5 | Marshall Inc. Intercompany Interests | Plan § 4.5 | Unimpaired | Presumed to Accept |

## ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS

The following treatment of and consideration to be received by Holders of Allowed Claims pursuant to this Plan shall be in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed Claims.

### 4.1    Class 1 (Secured Claims).

On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Secured Claim shall receive either (i) delivery of collateral securing such Allowed Secured Claim, (ii) the net proceeds, if any, of the sale or other disposition of the Assets on which such Holder has a Lien; or (iii) such other, less favorable treatment as may be agreed to in writing by the holder of such Allowed Secured Claim and the Plan Administrator. Any Deficiency Claim which may arise on account of the lack of Collateral or otherwise resulting from the aforesaid treatment shall be treated as a Class 3 Marshall Inc. Claim or Class 4 Marshall General Unsecured Claim, as applicable.

Class 1 is Unimpaired and Holders of Class 1 Secured Claims are presumed to accept the foregoing treatment and therefore are not entitled to vote on the Plan.

### 4.2    Class 2 (Priority Non-Tax Claims).

On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Priority Non-Tax Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim, or (b) such other treatment as to which the Plan Administrator and the holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing.

Distributions to holders of Allowed Class 2 Claims shall be made by the Plan Administrator from the Marshall Post-Confirmation Estate Fund until all Allowed Class 2 Claims are paid in full.

Class 2 is Unimpaired and Holders of Priority Non-Tax Claims are presumed to accept the foregoing treatment and therefore are not entitled to vote on the Plan.

### 4.3    Class 3 (Marshall Inc. Claims).

Class 3 consists of Claims in the Marshall Inc. Bankruptcy Case that are asserted, filed or scheduled against Marshall Inc. Each Holder of an Allowed Marshall Inc. Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Claim, or (b) such other treatment as to which the Plan Administrator and the holder of such Allowed Claim shall have agreed upon in writing.

Distributions to holders of Allowed Class 3 Claims shall be made by the Plan Administrator from the Marshall Inc. Post-Confirmation Estate Fund until all Allowed Class 3 Claims are paid in full.

Class 3 is Unimpaired and Holders of Marshall Inc. Claims are presumed to accept the foregoing treatment and therefore are not entitled to vote on the Plan.

### 4.4    Class 4 (Marshall General Unsecured Claims).

Class 4 consists of General Unsecured Claims in the Marshall Bankruptcy Case that are asserted, filed or scheduled against Marshall.  Each Holder of an Allowed Marshall General Unsecured Claim shall receive their *pro rata* share from the remaining portion of the Marshall Post-Confirmation Estate Fund, after satisfaction in full of senior Claims.  The *pro rata* share of each Holder's Allowed Class 4 Claim shall be determined by a formula, the numerator of which is the then unsatisfied amount of such Holders' Class 4 Allowed Claim and the denominator of which is the aggregate unsatisfied amount of the remaining Allowed Class 4 Claims.

Distributions to holders of Allowed Class 4 Claims shall be made by the Plan Administrator from the Marshall Post-Confirmation Estate Fund until all Allowed Class 4 Claims are paid in full.

Class 4 is Impaired and Holders of General Unsecured Claims are therefore entitled to vote on the Plan.

Holders of Allowed Class 4 Claims that choose to assign their Bank Litigation Claim to the Plan Administrator for prosecution shall receive, after payment to Bank Litigation Counsel of its fees and expenses, their *pro rata* share of the Bank Litigation Fund.  The *pro rata* share of each Holder's Bank Litigation Claim shall be determined by a formula, the numerator of which is the then unsatisfied amount of such Holders' Bank Litigation Claim and the denominator of which is the aggregate unsatisfied amount of the remaining Bank Litigation Claims.  Holders of Allowed Class 4 Claims that choose not to assign their Bank Litigation Claim to the Plan Administrator shall be permitted to pursue such claim individually but shall have no right to participate in the Bank Litigation Fund, if any.

### 4.5    Class 5 (Marshall Inc. Intercompany Interests).

Class 5 consists of the Interests of the Marshall Bankruptcy Estate in 100% of the equity in Marshall Inc. and the Marshall Inc. Bankruptcy Estate.  The Marshall Post-Confirmation Estate Fund shall receive all Assets of the Marshall Inc. Bankruptcy Estate after the passage of the Marshall Inc. Governmental  Bar Date and the satisfaction in full of senior Claims, or the establishment of an Administrative Reserve and Disputed Claim Reserve.

Distributions to holders of Allowed Class 5 Claims shall be made by the Plan Administrator from the Marshall Inc. Post-Confirmation Estate Fund until the Marshall Inc. Post-Confirmation Fund is fully administered, and then shall be, at the option of the Plan Administrator, reinstated, set off, settled, distributed, contributed, cancelled and released.

Holders of Class 5 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f).  Holders of Class 5 Claims are not entitled to vote to accept or reject the Plan.

## ARTICLE 5 - MEANS OF IMPLEMENTATION OF THE PLAN

**5.1**    **No Substantive Consolidation.**

The Plan is being proposed as a joint plan of liquidation of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of liquidation for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes set forth in the Plan.

**5.2**    **Plan Funding**.

(a)    The Plan shall be funded by a combination of the proceeds of sale of the Debtors' Assets, and proceeds from liquidation of remaining Assets, including the sale of the Properties, and as set forth herein. As a condition to effectiveness of this Plan, the Trustee must close on the Sale of substantially all of the Properties. The Sale of the Properties is intended to be exempt from otherwise applicable transfer taxes in accordance with section 1146(a) of the Bankruptcy Code.

(b)    The Plan Administrator shall segregate the Administrative Reserve based upon the Wind-Down Budget. With the Administrative Reserve established, the Plan Administrator shall utilize the Marshall Post-Confirmation Estate Fund for purposes of making distributions to holders of Allowed Claims in Classes 1, 2 and 4 after reserving for Disputed Claims. The Plan Administrator shall utilize the Marshall Inc. Post-Confirmation Estate Fund for purposes of making distributions to holders of Allowed Claims in Class 3 and Class 5. The Plan Administrator shall utilize the Bank Litigation Fund for purposes of making distributions to holders of Bank Litigation Claims in Class 4.

(c)    Upon or as a condition of the Effective Date, the Trustee shall disburse to the Marshall Post-Confirmation Estate Fund or the Marshall Inc. Post-Confirmation Estate Fund all Assets of the respective Debtors' Bankruptcy Estates. Even if the Plan Administrator utilizes the same bank accounts as the Trustee, all Cash held in the Trustee's accounts on the Effective Date shall be deemed to have been disbursed to the Marshall Post-Confirmation Estate Fund or the Marshall Inc. Post-Confirmation Estate Fund as the case may be.

**5.3**    **Appointment of Plan Administrator**.

(a)    <u>Appointment of Plan Administrator</u>. The Confirmation Order shall provide for the appointment of the Plan Administrator. The Plan Administrator shall be deemed the Estates' exclusive representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code.

(b)    <u>Bond</u>. The Plan Administrator shall serve without a bond. The Oversight Committee, at its option, may require the Plan Administrator to obtain a bond, provided that there is sufficient Cash available in the Estates to purchase a bond.

14

(c)    <u>Governance</u>. The Plan Administrator shall be governed by the Plan and the Plan Administrator Agreement.

(d)    <u>Succession Matters</u>.  In the event the Plan Administrator dies, is terminated, or resigns for any reason, the Oversight Committee shall designate a successor. If the Oversight Committee is unable to designate such a successor, the Bankruptcy Court may appoint a successor Plan Administrator from any candidate proposed by a party in interest.  Such successor Plan Administrator shall be deemed to succeed the Plan Administrator in all respects, without the need for further order of the Bankruptcy Court.  In the event of resignation or removal of the Plan Administrator, the departing Plan Administrator shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Plan Administrator or as ordered by the Bankruptcy Court; (b) turn over to the successor Plan Administrator all property of the Estates in his or her possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Debtors; and (c) otherwise assist and cooperate in affecting the assumption of his or her obligations and functions by the successor Plan Administrator.  The successor Plan Administrator may, in his or her discretion, retain such professionals as he or she deems necessary, including the Professionals of the departing Plan Administrator.  If the Plan Administrator is replaced, the Professionals retained by the Plan Administrator shall be entitled to payment of their reasonable, undisputed fees and expenses from the Estates through the date of the Plan Administrator's replacement.

(e)    <u>Funding of Plan Administrator's Activities</u>. The Plan Proponents, the Plan Administrator, and the Official Committee shall agree to a reasonable wind-down budget (the "<u>Wind-Down Budget</u>") on or before the Effective Date. The duties and obligations of the Plan Administrator hereunder are subject to the Wind-Down Budget.

(f)    <u>Indemnification</u>. The Plan Administrator and his or her designees, employees or professionals or any duly designated agent or representative of the Plan Administrator shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court.  The Plan Administrator may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith reliance on the advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court.  Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his or her determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court.  The Plan Proponents shall indemnify and hold harmless the Plan Administrator and his or her designees and Professionals, and all duly designated agents and representatives (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; <u>provided</u>

<u>however</u>, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**5.4**    <u>**Powers and Duties of Plan Administrator**</u>.

(a)    <u>Powers and Duties</u>. On the Effective Date, the Plan Administrator shall succeed to all of the rights of the Plan Proponents and the Estates as otherwise provided herein, with all powers necessary to protect, conserve, and liquidate all Assets, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Assets that, prior to the Effective Date, belonged to the Plan Proponents pursuant to applicable law.  The powers and duties of the Plan Administrator shall include, without further order of the Court, except where expressly stated otherwise, the rights:

    i.    to open and close bank accounts for the Debtors and their Estates as the sole signatory, invest Cash in accordance with section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims and pay taxes and other obligations in connection with the wind-down of the Estates in accordance with the Plan;

    ii.    to engage attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities, including professional persons that may have represented either the Trustee, Debtors or the Official Committee prior to confirmation of the Plan;

    iii.    to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Estates;

    iv.    to act on behalf of the Debtors and their Estates in all adversary proceedings and contested matters (including, without limitation, any Avoidance Actions and Causes of Action), then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan;

    v.    to dispose of, and deliver title to or otherwise realize the value of, all the remaining Assets;

    vi.    to negotiate and accept assignments of claims, demands, and causes of action for the benefit of the Holders of Bank Litigation Claims, upon determining in the Plan Administrator's discretion that such claims, demands, and causes of action assert colorable and meritorious claims, and to recognize the claims of the assignor for purposes of participating in and receiving a distribution as a Holder of a Bank Litigation Claim in Class 4;

vii.     to coordinate the storage, maintenance and disposal of the Records as he or she determines in his or her reasonable discretion in compliance with any applicable state and federal rules;

viii.    to dissolve Marshall Inc. in accordance with Sections 4.5 and 5.13 of the Plan;

ix.      to oversee compliance with the Debtors' accounting, finance and reporting obligations;

x.       to prepare United States Trustee quarterly reports and financial statements, and such other reports and financial statements as may be necessary or helpful to the Plan Administrator to carry out his or her duties, and to manage the calculation and disbursement of U.S. Trustee fees;

xi.      to oversee the filing of final tax returns, audits and other corporate dissolution documents if required;

xii.     upon consultation with the Oversight Committee, to object to Claims against the Debtors;

xiii.    upon consultation with the Oversight Committee, to compromise and settle Claims by and against the Debtors;

xiv.     to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtors;

xv.      to implement and/or enforce all provisions of the Plan;

xvi.     to implement and/or enforce all agreements entered into prior to the Effective Date;

xvii.    abandon any Assets without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Assets of the Estates; and

xviii.   to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan.

The duties and obligations of the Plan Administrator hereunder are subject to the extent of available funds in the Administrative Reserve and the Wind-Down Budget.

### 5.5     **Establishment of Oversight Committee**.

(a) Appointment of Oversight Committee. On or after the Effective Date, the Oversight Committee shall be appointed and shall consist of those members willing to serve, as selected by the Official Committee. The Oversight Committee shall not exceed seven (7) members. The Oversight Committee shall have the authority specified in the Plan and Plan Administrator

Agreement.  Any actions taken by the Oversight Committee shall be by majority vote.  The Plan Administrator shall consult with and provide information to the Oversight Committee with respect to any material action to be taken or not to be taken by the Plan Administrator as set forth in the Plan and the Plan Administrator Agreement.

(b) Reimbursement of Costs and Expenses. Except for the reimbursement of reasonable, actual costs and expenses incurred in connection with their duties as members of the Oversight Committee, the members of the Oversight Committee shall serve without compensation. Reasonable expenses incurred by members of the Oversight Committee may be paid by the Plan Administrator upon presentation of proper documentation without the need for Court approval.

(c) Liability of Members of the Oversight Committee. Subject to any applicable law, the members of the Oversight Committee shall not be liable for any act done or omitted by any member in such capacity, while acting in good faith and in the exercise of business judgment. Members of the Oversight Committee shall not be liable in any event except for gross negligence or willful misconduct in the performance of their duties hereunder.

(d) Indemnification. Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the members of the Oversight Committee shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court.  The Estates shall indemnify and hold harmless the members of the Oversight Committee from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties; provided however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**5.6    Establishment of Reserves and Funds.**

(a) Administrative Reserve. On or prior to the Effective Date, the Administrative Reserve shall be established by the Trustee.  If the Plan Administrator determines that additional funding of the Administrative Reserve is required, from time to time, following the Effective Date, such funding shall be made from available Cash, if any.  Available Cash may be sourced from the Disputed Claims Reserve, the Marshall Post-Confirmation Estate Fund, or any other source available to the Plan Administrator.  Except as otherwise provided for herein, the Administrative Reserve shall be used to pay the Post-Confirmation Expenses, including, without limitation, costs and expenses of professionals or other advisors retained by the Plan Administrator.

(b) Disputed Claim Reserves. As soon as practicable following the Effective Date, the Disputed Claim Reserves shall be established by the Plan Administrator if and as required; provided, however, that the Plan Administrator shall have no obligation to fund the Disputed Claim Reserves until, at the latest, immediately prior to the making of a Distribution to holders of Allowed Claims. The Disputed Claim Reserves shall be funded from available Cash in an amount equal to the amount holders of Disputed Claims would have otherwise been entitled but

for the dispute. The assets in the Disputed Claim Reserves shall be held separately from other assets held by the Plan Administrator subject to an allocable share of all expenses and obligations, on account of Disputed Claims.  Funds shall be removed from the Disputed Claims Reserves as the Disputed Claims are resolved, which funds shall be distributed as provided in Section 9.20 of the Plan.  Notwithstanding any other provision of the Plan to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Plan Administrator may treat any assets allocable to, or retained on account of, the Disputed Claims Reserves as held by one or more discrete entities holding Disputed Claims for federal, and applicable state, local or other, income tax purposes, and may determine that such entity or entities shall constitute "disputed ownership funds" under, and may make the election permitted by, Treasury Regulation 1.468B-9, or any successor provision thereto.

### 5.7    Preservation of Causes of Action.

Except as otherwise provided in this Plan or in any contract, instrument, release or agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtors, the Trustee, the Official Committee, or the Estates may have against any person or entity are preserved, including without limitation any and all Causes of Action under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

### 5.8    General Disposition of Assets.

Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of this Plan, as soon as is reasonably practicable following the Effective Date, the Plan Administrator shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash Assets in such manner as the Plan Administrator shall determine is in the best interests of the Estates and holders of Allowed Claims.  The proposed sale or other disposition of any remaining Assets by the Plan Administrator, regardless of the value of those Assets, shall be done in the manner consistent with the procedures established by the Bankruptcy Court's order, dated November 14, 2023 at Docket No. 284, except that the notice required to be given to the Official Committee shall instead be given by the Plan Administrator to the members of the Oversight Committee by email.  No other or further order of the Bankruptcy Court shall be required for the Plan Administrator to effectuate a sale of any Assets, free and clear of any liens, claims, or encumbrances, provided that no timely objection is filed to any proposed sale or other disposition of Assets.

### 5.9    Exemption from Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale or transfer of any of the Assets, including, but not limited to, the Sale of the Properties, or any sale or transfer of, from or by any Debtor, pursuant to, in contemplation of, or in connection with the Plan or pursuant to the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any

19

transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.10    Administrative Expense Claims Bar Date.

With the exception of Professional Fee Claims, persons asserting an Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after notice of the Effective Date has been mailed (the "Administrative Expense Claims Bar Date"). No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment against the Debtors, their Estates, the Trustee, the Official Committee, the Plan Administrator, or the Oversight Committee.

### 5.11    Deadline for Filing Applications For Payment of Professional Fee Claims.

All parties seeking payment of Professional Fee Claims arising prior to the Effective Date must file with the Bankruptcy Court a final application and/or an application for payment of reasonable fees and expenses on or before the date that is 30 days after notice of the Effective Date has been mailed (the "Fee Application Deadline"). Any Professional failing to file and serve such application on or before the Fee Application Deadline shall be forever barred from asserting any such right to payment against the Debtors, their Estates, the Trustee, the Official Committee, the Plan Administrator, or the Oversight Committee.

### 5.12    Execution of Documents to Effectuate Plan.

From and after the Effective Date, the Plan Administrator shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. Entry of the Confirmation Order shall authorize the Plan Administrator to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action.

**5.13**    **Dissolution of Marshall Inc.**

Following the Effective Date, the Debtors, through the activities of the Plan Administrator, shall continue in existence for the purposes of, among other things, completing the liquidation of Assets, winding up affairs and filing appropriate tax returns.  Upon the entry of an order closing the cases, Marshall Inc. shall be deemed dissolved for all purposes.  No other actions or filings or payments shall be required in furtherance of such dissolution.

**5.14**    **Post-Confirmation Reports and Fees**.

Reporting to Office of the United States Trustee. Following the Effective Date and until the Chapter 11 Cases are closed, not less than once every ninety (90) days, the Plan Administrator shall file all post-Effective Date reports required during such periods and shall pay from the Administrative Reserve all post-Effective Date fees charged or assessed against the Estates under 28 U.S.C. § 1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

**5.15**    **Official Committee**.

On the Effective Date, the Official Committee shall be deemed to be dissolved and the members of the Official Committee shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases, provided, however, that the Official Committee shall remain in existence for the purpose of reviewing and approving fee applications of Professionals.

**5.16**    **Insurance Preservation**.

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtors or any other Person.

**ARTICLE 6 - TREATMENT OF EXECUTORY
CONTRACTS & UNEXPIRED LEASES**

**6.1**    **General Provisions**.

All executory contracts and unexpired leases of the Debtors shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

**6.2**    **Notice of Deemed Rejection/Rejection Bar Date**.

Any party to an executory contract or unexpired lease that is rejected in accordance with Section 6.1 shall file a Proof of Claim for damages from such rejection no later than thirty (30) days after the Effective Date.  The failure to timely file a Proof of Claim shall be deemed a waiver of any Claim in connection with the rejection of such contract or lease.

21

**6.3** **Compensation and Benefit Programs**.

To the extent not previously terminated, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies and programs of the Debtors applicable generally to their employees, independent contractors or officers in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans and life, accidental death and dismemberment insurance plans, shall be terminated as of the Effective Date.

## ARTICLE 7 - CONDITIONS PRECEDENT

**7.1** **Conditions Precedent to Confirmation of the Plan**.

The following conditions must be satisfied, or otherwise waived in accordance with Section 7.3, on or before the Confirmation Date:

(a) The Disclosure Statement Approval Order shall have been entered and shall have become a Final Order; and

(b) Entry of the Confirmation Order, which shall be in form and substance reasonably satisfactory to the Plan Proponents and the Official Committee, and shall contain provisions that, among other things:

(i) authorize the implementation of the Plan in accordance with its terms;

(ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan;

(iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(iv) approve the Plan Administrator Agreement; and

(v) establish the Administrative Expense Claims Bar Date.

**7.2** **Conditions Precedent to the Effective Date**.

The Effective Date shall not occur and no obligations under the Plan shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3 hereof, on or before the Effective Date:

(a) The closing of the sale of substantially all of the Properties shall have occurred;

(b) The Confirmation Order shall have become a Final Order;

(c)    The Confirmation Order shall have authorized and approved the appointment of the Plan Administrator and the Oversight Committee;

(d)    The Plan Proponents shall have sufficient Cash on hand to pay all Administrative Expense Claims and fund the Administrative Reserve;

(e)    The Wind-Down Budget shall be agreed to by the Plan Proponents, Plan Administrator and the Official Committee; and

(f)    the Trustee shall have disbursed to the Marshall Post-Confirmation Estate Fund or the Marshall Inc. Post-Confirmation Estate Fund all Assets of the respective Debtors' Bankruptcy Estates.  Even if the Plan Administrator utilizes the same bank accounts as the Trustee, all Cash held in the Trustee's accounts on the Effective Date shall be deemed to have been disbursed to the Marshall Post-Confirmation Estate Fund or the Marshall Inc. Post-Confirmation Estate Fund as the case may be.

**7.3    <u>Waiver of Conditions Precedent</u>**.

Each of the conditions precedent in Sections 7.1 and 7.2 hereof may be waived or modified without further Court approval, in whole or in part, but only with the consent of the Plan Proponents and the Official Committee.

**ARTICLE 8 - INJUNCTION; EXCULPATION**

**8.1    <u>General Injunctions</u>**.

**The following provisions shall apply and shall be fully set forth in the Confirmation Order.**

**(a)    <u>Injunctions Against Interference with Consummation or Implementation of Plan</u>.  All holders of Claims shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtors, the Trustee, the Estates, the Plan Administrator, the Official Committee (and its members) or the Oversight Committee (and its members) with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.**

**(b)    <u>Plan Injunction</u>.  Except as otherwise specifically provided for by this Plan, as of and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Debtors, the Trustee, the Estates, the Plan Administrator, the Official Committee (and its members) or the Oversight Committee (and its members) to the fullest extent authorized or provided by the Bankruptcy Code.**

23

**(c)** <u>Release of Collateral</u>.    **Except as expressly provided otherwise in the Plan, unless a Holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan, each Holder of (A) an Allowed Secured Claim; and (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Debtors any and all property that secures or purportedly secures such Claim; and (y) execute such documents and instruments as the Debtors require to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title and interest in such property shall revert to the Debtors, free and clear of all Claims against the Debtors, including (without limitation) liens, charges, pledges, encumbrances and/or security interests of any kind. No Distribution hereunder shall be made to or on behalf of any Holder of such Claim unless and until such Holder executes and delivers to the Debtors such release of liens. Any such Holder that fails to execute and deliver such release of liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a Holder of a Disputed Claim shall not be required to execute and deliver such release of liens until the time such Claim is Allowed or Disallowed.**

**8.2** <u>Exculpation</u>. **As of the Confirmation Date, the Plan Proponents and their professionals (including professional firms and individuals within such firms) shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the Plan Proponents and their professionals (including professional firms and individuals within such firms), shall not have or incur any liability to any holder of any Claim or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Chapter 11 Cases, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, including, without limitation, the steps taken to effectuate the transactions described in Article 5 of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions constituting fraud, willful misconduct or gross negligence as determined by a Final Order; and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

**8.3** <u>No Bar to Claims Against Third Parties</u>.

Except as set forth herein, Holders of Claims against the Debtors are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtors.

**8.4** <u>All Distributions Received in Full and Final Satisfaction</u>.

Except as otherwise set forth herein, all payments, all Distributions to be made in accordance with the Plan on account of Claims, and all rights conferred under this Plan shall be

received in full and final satisfaction of the Estates' obligations for such Claims as against the Debtors, their property and the Estates.

**8.5** **No Modification**

The provisions of this Article 8 are not intended, and shall not be construed, to modify the res judicata effect of any order entered in the Chapter 11 Cases, including, without limitation, the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

**8.6** **Discharge of Claims for Marshall Only**.

Pursuant to section 1141(d) of the Bankruptcy Code, upon completion of Distributions under the Plan, Marshall will be discharged from any debt that arose before the Confirmation Date and any debt of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code whether or not a proof of Claim based on such debt is filed or deemed filed under section 501 of the Bankruptcy Code, such Claim is Allowed or the Holder of such Claim has accepted the Plan, except to the extent that Marshall (i) is denied a discharge under section 1141(d)(3) and 727(a) of the Bankruptcy Code, or (ii) is denied the discharge of any particular Claims under Section 1141(d)(2) and 523 of the Bankruptcy Code.

Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge Marshall Inc. of any debts.

**8.7** **Extension of Time to Object to Marshall Discharge or Dischargeability**.

The time for any Person to file an objection to the grant of a discharge to Marshall pursuant to section 727 of the Bankruptcy Code or for any Creditor to file an objection to the dischargeability of any debt pursuant to section 523 of the Bankruptcy Code is extended for cause under Bankruptcy Rules 4004 and 4007 to the date that all Distributions under the Plan are complete and Marshall is entitled to a discharge under Section 8.6 of the Plan.

**ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS**

**9.1** **Distributions by Plan Administrator**.

The Plan Administrator shall make Distributions on account of Allowed Claims in accordance with Article 4 of the Plan. The Plan Administrator may use the services of a third party to aid in the Distributions required to be made under this Plan, including the Distribution Agent.

**9.2** **Indefeasibility of Distributions**.

All Distributions made under the Plan shall be indefeasible.

### 9.3 **Frequency of Distributions**.

The Plan Administrator shall make an initial distribution on the Effective Date or as soon as practicable thereafter and at such other times as may be determined to be appropriate by the Plan Administrator in consultation with the Oversight Committee.

### 9.4 **Payment in U.S. Dollars**.

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on domestic bank(s) selected by the Plan Administrator in accordance with the Plan or by wire transfer from a domestic bank.

### 9.5 **Claims In U.S. Dollars**.

Any Claims asserted in foreign currencies shall be converted to United States Dollars in accordance with the prevailing exchange rates published by the Wall Street Journal on the Confirmation Date.

### 9.6 **Distributions Only on Business Days**.

Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, then such Distribution shall instead be due the next Business Day.

### 9.7 **Transmittal of Payments and Notices**.

Except as otherwise provided in the Plan, all Distributions shall be made to the holder of a Claim by regular first-class mail, postage prepaid, in an envelope addressed to such holder at the address listed on its Proof of Claim filed with the Bankruptcy Court or, if no Proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a holder of a Claim provides to the Plan Administrator after the Effective Date in writing at least fifteen (15) business days prior to a Distribution Date. The Plan Administrator shall be under no obligation to ascertain the mailing address of any holder of a Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing. Payments made in accordance with the provisions of this Section shall be deemed made to the holder regardless of whether such holder actually receives the payment.

### 9.8 **Record Date for Distributions**.

Except as otherwise provided in a Final Order of the Bankruptcy Court, transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 with appropriate filings ("Claim Transfer Document") made on or before the Effective Date (the "Distribution Record Date") shall be treated as the holders of those Claims for all purposes of this Plan, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Distribution Record Date. The Plan Administrator shall be under no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.

In making a Distribution with respect to any Claim, the Plan Administrator shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the Proof of Claim filed with respect to such Claim, on the Schedules as the holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Distribution Record Date.

### 9.9     **Unclaimed Distributions**.

Unclaimed Distributions (including Distributions made by checks that fail to be cashed or otherwise negotiated within ninety (90) days after the Distribution Date or which Distributions are returned to the Plan Administrator as undeliverable to the addresses of record as of the Distribution Record Date, shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or order of the Bankruptcy Court.  Any such Unclaimed Distributions shall, as soon as is practicable, be redistributed pursuant to the provisions of the Plan.

### 9.10     **No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars**.

(a)     Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with a half-penny or less being rounded down and fractions in excess of half of a penny being rounded up.

(b)     Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no Distribution of less than One Hundred Dollars ($100) shall be made pursuant to the Plan. Whenever any Distribution of less than One Hundred Dollars ($100) under the Plan would otherwise be required, such funds will be retained by the Plan Administrator for the account of the recipient until such time that successive Distributions aggregate to One Hundred Dollars ($100), at which time such payment shall be made, and if successive Distributions do not ever reach One Hundred Dollars ($100) in the aggregate, then such Distributions shall revert to the Estates and be redistributed in accordance with the Plan.

### 9.11     **Setoff and Recoupment**.

Except as otherwise provided in the Plan, the Plan Administrator may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Plan Administrator may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Plan Administrator of any right of setoff or recoupment against the holder of any Claim.

**9.12    Payment of Taxes on Distributions Received Pursuant to the Plan**.

(a)    The Plan Proponents shall provide the Plan Administrator with all available tax identification or social security numbers that they may possess for Creditors (collectively the "Tax Information") and the Plan Administrator may rely upon the same for purposes of Distributions and associated tax reporting and compliance.  Notwithstanding any provision to the contrary herein, as a condition to payment of any Distribution to a Creditor under this Plan, each Creditor shall provide a valid Tax Information if requested by the Plan Administrator for purposes of tax reporting.  All Persons that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their Distributions.

(b)    At such time as the Plan Administrator believes that Distributions to a particular Class of Claims is likely, the Plan Administrator shall review the available Tax Information provided by the Debtors and where necessary, request Tax Information in writing from Creditors (the "Tax Information Request").  Any Creditor who fails to respond to Tax Information Request within ninety (90) days from the date posted on the Tax Information Request, shall forfeit all Distributions such Creditor may otherwise be entitled to under this Plan and such forfeited funds will revert to the Debtors to be disbursed in accordance with the terms and priorities established in this Plan.

**9.13    Compliance With Tax Withholding and Reporting Requirements**.

With respect to all Distributions made under the Plan, the Plan Administrator will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

**9.14    Disputed Distribution**.

If a dispute arises as to the identity of a holder of an Allowed Claim who is to receive a Distribution, the Plan Administrator may, in lieu of making such Distribution to such holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

**9.15    Claims Administration Responsibility**.

(a)    Reservation of Rights.  Unless a Claim is specifically Allowed prior to or after the Effective Date, prior to the Effective Date, the Plan Proponents, and after the Effective Date, the Plan Administrator, reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Priority Non-Tax Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Plan Administrator's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim.

(b)    <u>Objections to Claims</u>.  Prior to the Effective Date, the Plan Proponents shall be responsible for pursuing any objection to the allowance of any Claim.  From and after the Effective Date, the Plan Administrator may dispute, object to, compromise or otherwise resolve all Claims, in accordance with Sections 5.3 and 5.4 hereof.  Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims shall be filed and served no later than one hundred eighty (180) days after the Effective Date, provided that the Plan Administrator may request (and the Bankruptcy Court may grant) one or more extensions of time by filing a motion with the Bankruptcy Court.

(c)    <u>Filing Objections</u>.  An objection to a Claim shall be deemed properly served on the claimant if the Plan Proponents or Plan Administrator, as applicable, effect service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's Proof of Claim at least thirty (30) days prior to the hearing thereon.  The Plan Proponents or the Plan Administrator may also effectuate service of an objection to a claim: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, to the signatory on the Proof of Claim or interest or other representative identified on the Proof of Claim or interest or any attachment thereto or; (iii) by first class mail, postage prepaid, on counsel that has appeared on the behalf of the claimant in the Chapter 11 Cases.

(d)    <u>Determination of Claims</u>.  Except as otherwise agreed by the Plan Proponents or Plan Administrator, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law.  Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

**9.16    <u>Treatment of Claims without Further Order of the Court</u>.**

(a)    <u>Certain Scheduled Claims</u>.  As of the Effective Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a Proof of Claim has not been filed by the Creditor, shall be deemed Disallowed and expunged.  All Scheduled Claims that correspond to a Proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed Proof of Claim and the Scheduled Claims, regardless of priority, shall be expunged from the claims register; <u>provided</u> <u>however</u>, that such Proofs of Claim shall be subject to objection in accordance with Section 9.15 hereof.

(b)    <u>Late Filed Claims</u>.  Any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive

any distributions on account of such Claims, unless on or before the Confirmation of this Plan, such later Claim has been deemed timely filed by a Final Order.

**9.17    Disputed Claims**.

(a) Except to the extent the Court determines that a lesser amount is adequate, the Plan Administrator shall, on each Distribution Date, deposit in a Disputed Claims Reserve, Cash equal to the Distributions that would have been made to holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated and/or contingent, the greater of (i) $1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the Plan Proponents, Plan Administrator, or the holder of such Claim.

(b) For purposes of effectuating the provisions of this Section 9.17 and the Distributions to holders of Allowed Claims, the Court, upon the request of any holder of a Claim, on the one hand, or the Plan Administrator, on the other hand, may estimate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts estimated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan and for purposes of the Disputed Claims Reserve.

(c) When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date, to the extent of available Cash to make such Distribution.

(d) In no event shall any holder of any Disputed Claim be entitled to receive (under this Plan or otherwise) any Cash payment which is greater than the amount reserved, if any, for such Disputed Claim pursuant to this Section 9.17.  In no event shall the Plan Administrator have any responsibility or liability for any loss to or of any amount reserved under this Plan unless such loss is the result of that party's fraud, willful misconduct, or gross negligence.  In no event may any Creditor whose Disputed Claim is subsequently allowed, pursue or recover or from any other Creditor in respect of any funds received as Distributions under the Plan.

(e) To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, then on the next succeeding Distribution Date, the Plan Administrator shall make, in accordance with the terms of this Plan, a Distribution of the excess amount reserved for such Disputed Claim.

(f) Any Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

**9.18** **Limitations on Funding of Disputed Claims Reserve**.

Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Court, the Plan Administrator shall have no obligation or duty to fund the Disputed Claims Reserve.

**9.19** **Tax Requirements for Income Generated by Disputed Claims Reserves**.

The Plan Administrator shall pay, or cause to be paid, out of the funds held in a Disputed Claims Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in a Disputed Claims Reserve. The Plan Administrator shall file, or cause to be filed, any tax or information return related to a Disputed Claims Reserve that is required by any federal, state, or local taxing authority.

**9.20** **Timing of Distributions on Disputed Claims Subsequently Allowed**.

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Distribution Date that is at least fifteen (15) business days after such Claim is Allowed.

**9.21** **No Payment or Distribution on Disputed Claims**.

Notwithstanding any provision to the contrary herein, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim or some portion thereof is allowed by Final Order of the Bankruptcy Court. For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution. Holders of Disputed Claims shall be bound, obligated and governed in all respects by this Plan.

## ARTICLE 10 - PLAN INTERPRETATION, CONFIRMATION AND VOTING

**10.1** **Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired**.

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**10.2** **Withdrawal and Modification of Plan**.

This Plan may be withdrawn or modified by the Plan Proponents at any time prior to the Confirmation Date. The Plan Proponents or the Plan Administrator may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to substantial consummation thereof. Upon request by the Plan Administrator, the Plan may be modified after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

**10.3**    **Governing Law**.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

**10.4**    **Voting of Claims**.

Each holder of an Allowed Claim as of the Voting Record Date in Class 4 shall be entitled to vote to accept or reject the Plan.  The Disclosure Statement Approval Order shall govern the manner and procedures for casting of Ballots with the Voting Agent.

**10.5**    **Acceptance by Impaired Class**.

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**10.6**    **Cram Down**.

The Plan Proponents will request that the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the possible rejection of the Plan by any impaired Class entitled to vote on the Plan and the Plan shall constitute a motion for such relief.

## ARTICLE 11 - RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1**    From the Confirmation Date until entry of a final decree closing the Chapter 11 Cases, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Chapter 11 Cases for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtors to any Creditors, holders of Claims, or other parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court including, but not limited to, the Causes of Action;

(e) to enforce and interpret the provisions of this Plan, the Confirmation Order, and the Plan Administrator Agreement;

(f) to hear and determine any matters relating to the appointment and replacement of the Plan Administrator;

(g) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(h) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(i) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, the Confirmation Order, or the Plan Administrator Agreement, as may be necessary to carry out the purposes and the intent of this Plan;

(j) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(k) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated; and

(l) to adjudicate any disputes between the members of the Oversight Committee or between the Oversight Committee and the Plan Administrator.

## ARTICLE 12 - MISCELLANEOUS PROVISIONS

**12.1**   <u>**Headings**</u>.

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

**12.2**   <u>**No Attorneys' Fees**</u>.

No attorneys' fees with respect to any Claim shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

**12.3**   <u>**Notices**</u>.

All notices, requests and demands by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage

prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, all charges prepaid, or (iv) electronic mail, and shall be deemed to have been given when received and confirmed by telephone or reply email by the following parties:

If to the Plan Administrator:

[_____]

With copy to:

[_____]

### 12.4    **Binding Effect**.

The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtors under chapter 7 or 11 of the Bankruptcy Code).   The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

[remainder of page intentionally blank]

Dated: February 20, 2024

                                              M. BURTON MARSHALL,
a/k/a BURT MARSHALL,
a/k/a MILES BURTON MARSHALL,

By: */s/ Fred Stevens*
    Fred Stevens, as Chapter 11 Trustee of
the estate of M. Burton Marshall a/k/a Burt
Marshall a/k/a Miles Burton Marshall

MILES B. MARSHALL, INC.

By: */s/ Fred Stevens*
    Fred Stevens, as Authorized Person as
Chapter 11 Trustee of the estate of M.
Burton Marshall a/k/a Burt Marshall a/k/a
Miles Burton Marshall

Approved as to form:

By: */s/ Lauren C. Kiss*
    Fred Stevens
    Lauren C. Kiss
    200 West 41st Street, 17th Floor
    New York, New York 10036
    Tel: (212) 972-3000
    Fax: (212) 972-2245
    Email: fstevens@klestadt.com
           lkiss@klestadt.com

*General Counsel to the Trustee and Debtor
Miles B. Marshall Inc.*