**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

M. BURTON MARSHALL,
a/k/a BURT MARSHALL,
a/k/a MILES BURTON MARSHALL, *et al.*,

Debtors.

Case No. 23-60263-PGR
Chapter 11 (Main case)
Case No. 23-60723-PGR
(Jointly Administered)

### *AGREED* NOTICE OF TAKING RULE 2004 EXAMINATION OF CORPORATE REPRESENTATIVE(S) OF BERKSHIRE BANK WITH KNOWLEDGE OF VARIOUS SUBJECT MATTERS ON MAY 21, 2025

Fred Stevens, in his capacity as administrator of the confirmed Joint Plan of Liquidation in the case (the "Plan Administrator") of M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall ("Marshall," or the "Debtor," and collectively with Miles B. Marshall Inc., the "Debtors"), by and through his undersigned special litigation counsel, will examine the below person(s), under oath, on the following date and at the following time and location pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure:

| | |
|---|---|
| Examinee: | **Corporate Representative(s) of Berkshire Bank with knowledge of Deposition Topics Nos. 1, 2, 7, 9, 10, 11-13, 28, 31, 36, and 37 (except to the extent narrowed by agreement by counsel for the parties) set forth in Schedule A(IV) of the attached Subpoena For Rule 2004 Examination** |
| Date: | **MAY 21, 2025** |
| Time: | **10:30 A.M.** |
| Location: | **Oneida County Supreme Court Law Library**<br>**235 Elizabeth Street**<br>**Utica, NY 13501**<br>**Phone: 315-266-4570** |

171592577.1

The Rule 2004 Examination may continue from day to day until completed. The Rule 2004 Examination is being taken pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and the *Agreed Order, Pursuant To Fed. R. Bankr. P. 2004, Authorizing Chapter 11 Trustee To (I) Serve A Subpoena For Rule 2004 Examination Duces Tecum On Berkshire Bank; (II) Seek The Production Of Documents Requested Therein; And (III) Examine The Bank's Representative(s) With Knowledge About The Subject Matters Set Forth Therein* entered in the above-captioned case on November 25, 2024 (Docket No. 570).

The Rule 2004 Examination will be taken before an officer authorized to record the testimony. The scope of the Rule 2004 Examination shall be as described in Rule 2004 of the Federal Rules of Bankruptcy Procedure. It is the Examinee's responsibility to provide and pay for a translator, if one is needed at the Rule 2004 Examination.

Dated:  New York, New York
        May 2, 2025

**FOX ROTHSCHILD LLP**

By:  */s/ Robert F. Elgidely*
     Robert F. Elgidely
     Joseph J. DiPasquale
     Catherine E. Youngman
     101 Park Avenue, 17th Floor
     New York, NY 10178
     Telephone: (212) 878-7900
     Emails: relgidely@foxrothschild.com
             jdipasquale@foxrothschild.com
             cyoungman@foxrothschild.com

     *Special Litigation Counsel to Fred Stevens,
       Plan Administrator of the confirmed Joint
       Plan of Liquidation*

171592577.1

# UNITED STATES BANKRUPTCY COURT

Northern District of New York

In re __M. BURTON MARSHALL, et al.,__          Case No. __23-60263-PGR (Lead Case)__

              Debtor

Chapter __11__

**SUBPOENA FOR RULE 2004 EXAMINATION**

To: __BERKSHIRE BANK, 24 NORTH STREET, PITTSFIELD, MA 01201__

*(Name of person to whom the subpoena is directed)*

[X] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure and Local Rule 2004-1.

| PLACE | DATE AND TIME |
|---|---|
| Fox Rothschild LLP<br>33 Arch Street, Suite 3110<br>Boston, MA 02110 | November 11, 2024 at 10:00 a.m. |

The examination will be recorded by this method: __Stenographic Means__

[X] *Production:* **YOU ARE COMMANDED** to produce the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material at the time, date, and place set forth below (if different from that of the examination):

| PLACE | DATE AND TIME |
|---|---|
| Fox Rothschild LLP (Attn: Robert F. Elgidely)<br>2 South Biscayne Boulevard, Suite 2750<br>Miami, FL 33131 | October 11, 2024 at 10:00 a.m. |

**SEE SCHEDULE A HERETO FOR INSTRUCTIONS, DEFINITIONS, DOCUMENTS REQUESTED AND DEPOSITION TOPICS**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

                            OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* __Fred Stevens, Chapter 11 Trustee__ who issues or requests this subpoena, are:
Robert F. Elgidely, Esq., 2 South Biscayne Boulevard, Suite 2750, Miami, FL 33131, Email: relgidely@foxrothschild.com, Tel: (305) 442-6543

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

LF-84 (rev. 12/01/21)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

    I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

LF-84 (rev. 12/01/21)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
# (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

. . .

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

---

LF-84 (rev. 12/01/21)

## SCHEDULE A

### INSTRUCTIONS, DEFINITIONS, DOCUMENTS REQUESTED AND DEPOSITION TOPICS

**I.      INSTRUCTIONS**

A.      This document request is continuing in nature. When new knowledge or information comes to your attention you shall supplement the information supplied in the answers to the document request forthwith.

B.      This request calls for the production of all responsive documents in your possession, custody or control or available to you, your employees, accountants, attorneys, auditors or other persons acting on your behalf, in your employment, and/or under your direction or the direction of your agents and representatives.

C.      For each and every Request herein, you shall produce documents in your possession, custody, or control which shall include, but not be limited to, documents, objects or articles described that are in your possession or for which you have the right to secure the original or a copy from another person or entity. The fact that your investigation is continuing or discovery is incomplete is not an excuse for your failure to respond to each request as fully and completely as possible. Your responses should consist of information known to you through yourself, your agents, your attorneys, your employees, or your representatives. If copies or drafts exist of a document, the production of which has been requested herein, produce and submit for inspection and copying each and every copy and draft which differs in any way from the original document or from any copy or draft.

D.      Please organize and label (without permanently marking the item produced) the documents being produced to correspond with the numbered paragraph and each subset thereof to which such documents are responsive. If a document is responsive to more than one document request, each document request to which it is responsive should be identified.

E.      If at any time you had possession, custody, or control of any document requested herein, and such document has been lost, destroyed, discarded, or is not presently in your possession, any such documents shall be identified as completely as possible by providing the following information:

1. The name(s) of the author(s) of the document;
2. The name(s) of the person(s) to whom the documents or copies were sent;
3. The date of the document;
4. The date on which the document was received by each addressee, copyee, or its recipients;
5. A complete description of the nature and subject matter of the document;
6. The date on which the document was lost, discarded, or destroyed; and
7. The manner in which the document was lost, discarded, or destroyed.

161279599.1

  F. With respect to any document that you withhold under claim of privilege, you shall number such documents, hold them separately, and retain them intact pending a ruling by the Court on the claimed privilege. In addition, you shall provide a statement, signed by an attorney representing you, setting forth as to each such document:

  1. The name(s) of the sender(s) of the document;
  2. The name(s) of the author(s) of the document;
  3. The name(s) of the person(s) to whom the document or copies were sent;
  4. The job title of every person named in subparagraphs 1, 2 and 3 above;
  5. The date of the document;
  6. The date on which the document was received by each addressee, copyee, or its recipient;
  7. A brief description of the nature and subject matter of the document; and
  8. The statute, rule, or decision which is claimed to give rise to the privilege.

  G. If, after exercising due diligence to secure or produce the document(s) requested, you cannot secure responsive documents, you must identify which Request(s) for which you do not have a responsive document, and answer the request for production to the fullest extent possible, specifying your inability to produce the document(s), and providing the identity of the person who has possession, custody, or control of the requested document(s).

  H. All words, names, and terms in this request for production shall have their plain and ordinary meanings unless specifically defined in Part II herein.

  I. Copies of documents which are identical duplicates of other documents which have already been produced for inspection and copying in this case need not be produced again, except that the duplicates must be produced if handwritten or any other type of notes or similar intelligence appear thereon or are attached thereto, including markings on slips indicating the routing of the document to individuals or organizations.

  J. The singular and plural forms shall be construed interchangeably so as to bring within the scope of this document request any information which might otherwise be construed as being outside of the scope of such request.

  K. "And" and "or" shall be construed interchangeably so as to bring within the scope of this document request any information which might otherwise be construed as being outside of the scope of such request.

  L. "Any" and "all" and "each" and "every" shall be construed to bring within the scope of this request any information which might be construed to relate to the subject matter of the request.

  M. The use of the singular form of any word includes the plural and vice versa.

  N. Unless otherwise stated herein, the time period encompassed by this Request shall be April 20, 2017 through and including April 20, 2023.

2

161279599.1

## II.   DEFINITIONS

Unless otherwise specified, the following terms and phrases as used herein shall, when utilized, mean as follows:

1. The term "**Account(s)**" means any and all types of bank accounts including, but not limited to, checking, savings, money market, escrow, trust, demand deposit, and/or certificate of deposit titled in the name(s) of M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall or any corporation, partnership, trust, unincorporated association or other entity in which he had or has any ownership interest or over which he exercised or exercises any degree of control (past or present) including, but not limited to, the following Account(s):

| | | |
|---|---|---|
| i. | M. Burton Marshall | Account No. X2301 |
| ii. | M. Burton Marshall d/b/a M&M Press | Account No. X8128 |
| iii. | M. Burton Marshall d/b/a Marshall Tax Service | Account No. X0522 |
| iv. | M. Burton Marshall d/b/a Marshall Moving | Account No. X1246 |
| v. | M. Burton Marshall d/b/a Marshall Storage | Account No. X8136 |
| vi. | M. Burton Marshall d/b/a Marshall Maintenance | Account No. X2218 |
| vii. | M. Burton Marshall d/b/a Marshall Rentals | Account No. X8400 |
| viii. | Rental Security Deposits | N/A |
| ix. | Storage Unit Security Deposits | Account No. X2301 |

2. The term "**Alert(s)**" can mean, but is not necessarily limited to, any automated Report(s) generated by account monitoring systems or received in the ordinary course of the Bank's business, were part of its standard business practice of investigating potentially fraudulent activity, or were otherwise discoverable as supporting documentation underlying (but not referencing) a suspicious activity report relating to the Account(s).

3. The terms "**Bank,**" "**You,**" **or** "**Your,**" mean Berkshire Bank as well as such entity's predecessors, successors, parents, subsidiaries (direct or indirect), affiliates, divisions, groups and other operational or functional units, each officer, director, employee, agent, or representative of any of the foregoing entities, and each person acting or authorized to act on behalf of any of the foregoing entities (past or present).

4. The phrase "**Bank Records**" means bank statements, cancelled checks (front and bank), cashier's checks, over-the-counter checks, deposit slips, wire transfer instructions (domestic and international), wire transfer advices (domestic and international), and deposit slips for the Account(s) (as defined above).

3

5. The phrase "**Bank Secrecy Act**" means the Bank Secrecy Act, the Currency and Foreign Transactions Reporting Act of 1970, 31 U.S.C. § 5311, *et seq.*, and any implementing regulations of the Bank Secrecy Act.

6. The term "**Communication(s)**" means any written or oral statement, dialogue, colloquialism, discussion, conversation or agreement of any kind or character, including, by way of example and without limitation, any act or instance whereby messages, facts, data or any other information is transmitted orally, visually, in writing, electronically or by any other means or media from natural person or firm to another (e.g., personal conversations, telephone conversations, letters, e-mails, meetings, memoranda, telegraphic and telex communications or transmittals of documents), any manner or form of information, memorandum or notes or message transmission, however produced or reproduced, whether by "document" as herein defined or orally or otherwise, which was distributed or circulated between or among persons, or data storage or processing units and any and all documents containing, consisting of, or relating or referring, in any way, either directly or indirectly, to, a communication.

7. The terms "**concern**" or "**concerning**" means relating to, referring to, connected with, commenting on, responding to, supporting, mentioning, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, comprising or constituting.

8. The term "**Debtor**" means M. Burton Marshall a/k/a Burt Marshall a/k/a Miles Burton Marshall as well as any corporation, partnership, trust, unincorporated association or other entity in which he had or has any ownership interest or over which he exercised or exercises any degree of control (past or present) including, but not limited to, (i) M&M Press; (ii) Marshall Tax Service; (iii) Marshall Moving; (iv) Marshall Storage; (v) Marshall Maintenance; and (vi) Marshall Rentals.

9. The phrase "**Due Diligence Materials**" means all Communication(s), Document(s), Electronic Data, and ESI (as each term is defined herein) provided, furnished, obtained, received, created, or generated to fulfill the Bank's KYC (Know-Your-Customer) obligations for the Account(s) (as defined herein) including, but not limited to, CDD (Customer Due Diligence), EDD (Enhanced Due Diligence), and CIP (Customer Identification Program).

10. The term "**Document(s)**" shall have a synonymous meaning equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure and shall include, but shall not be limited to, the original and all drafts of all written and graphic matter, however produced or reproduced, of any kind or description, whether or not approved, signed, sent, received, re-drafted or executed, and all copies thereof which are different in any way from the original (whether by interlineation, date-stamp, notation, indication of copies sent or received, or otherwise), including, without limitation, any E-mails, paper, letter, correspondence, memoranda (including interoffice and intraoffice memoranda), notes, memoranda for files, memoranda of telephone or other conversation, announcement, bulletin, press release, newspaper or magazine article, pamphlet, circulars, advertising material, studies, analysis, statistics, surveys, drawing, sketch, schematic, chart, graph, investigation, study, working paper, summary, report, opinion, table, schedule, extract, blueprint, portfolio, ledger, worksheet, prospectus, financial projection, financial statement, financial schedule, book, note, notation, message slip, telegram, telex and telecopier

4

message, agreement, contract, object, record, transcript, hearing, meeting, diary, or other communication, chronological data, minutes, agendas, transcriptions, record, report, invoice, receipt, return, computer printout or other computer derived data, schedule, affidavit, cancelled check, check stub, delivery ticket, bill of lading, graph or aural records or representations of any kind, including without limitation, photographic matter, microfiche, microfilm, video-tape, motion picture and electronic, all mechanical or electronic sound recordings or transcripts thereof (including without limitation tapes, cassettes, discs and recordings) in your possession, custody, and/or control, or your agents, representatives or attorneys, unless privileged, or of which you have knowledge.

11. The phrase "**Electronic Data**" or the term "**Data**" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic Data includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, Database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, TIF files, batch files, ASCII files, .pdf (portable document format) files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic Data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term Electronic Data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

12. The acronym "**ESI**" means data including writings, drawings, emails, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form.

13. The term "**Loan(s)**" has its plain and ordinary meaning and includes, but is not limited to, any and all extensions of credit (including, but not limited to, Paycheck Protection Program or Economic Injury Disaster loan(s)) to the Debtor or any corporation, partnership, trust, unincorporated association or other entity in which he had or has any ownership interest or over which he exercised or exercises any degree of control (past or present) including, but not limited to, (i) M&M Press; (ii) Marshall Tax Service; (iii) Marshall Moving; (iv) Marshall Storage; (v) Marshall Maintenance; and (vi) Marshall Rentals.

14. The term "**Person**" includes natural persons, proprietorships, partnerships, firms, corporations, institutions, bodies, joint ventures, estates, trusts, receivers, public corporations,

5

161279599.1

other forms of legal entity, municipal corporations, federal, state and local governments, all departments and agencies thereof, and any other governmental agencies, political subdivisions, groups, associations or organizations, and any other group or combination acting as an entity.

15. The phrase "**Policies/Procedures**" means any written or oral policy(ies), procedure(s), guideline(s), manual(s), training material(s), best practices, and any amendment(s) thereto established by (or for the benefit of), and/or utilized or maintained by or for, the Bank (as defined above).

16. The terms "**possession**," "**custody**," or "**control**" include the joint or several possession, custody or control not only by the person or entity to whom these requests are directed, but also the joint and several possession, custody or control by each or any other person or entity acting or purporting to act on behalf of said person or entity, whether as an employee, attorney, accountant, agent, sponsor, spokesperson, or otherwise.

17. The phrase "**Related to**" means directly or indirectly, concerning, referring to, reflecting, describing, evidencing, constituting, pertaining to, arising out of or in connection with, or in any way legally, logically or factually connected with the matter discussed.

18. Unless otherwise stated, the "**Relevant Period**" for each of the topics and document requests set forth herein is April 20, 2017 through and including April 20, 2023.

19. The term "**Report(s)**" means:

(i) ACH transaction activity report(s);

(ii) balance fluctuation report(s);

(iii) significant balance change report(s);

(iv) EARNS report(s);

(v) large transaction report(s);

(vi) funds flow report(s);

(vii) insufficient funds or overdraft report(s);

(viii) overdrawn account(s) report(s);

(ix) exception report(s);

(x) exception item module(s);

(xi) uncollected funds report(s);

(xii) daily report(s) of drawings against uncollected funds;

6

161279599.1

(xiii)   return deposit image report(s);

(xiv)   kiting suspect report(s), suspect kiting report(s), or check kiting report(s);

(xv)    314b request(s);

(xvi)   investigation case summary(ies);

(xvii)  currency transaction report(s);

(xviii) report(s) of international transportation of currency or monetary instrument(s);

(xix)   report(s) of foreign bank and financial account(s);

(xx)    Form 8300(s);

(xxi)   monetary instrument log(s);

(xxii)  relevant adverse information;

(xxiii) transaction monitoring report(s);

(xxiv)  Notice(s) of Delayed Availability;

(xxv)   Notices of Case-by-Case Holds;

(xxvi)  Notice(s) of Exception Holds;

(xxvii) Notice(s) of Safeguard Holds;

(xxviii) Notice(s) of Regulation CC Holds;

(xxix)  NSF check journal(s);

(xxx)   NSF Items to be paid or returned report(s);

(xxxi)  Notice(s) of checks paid against insufficient funds;

(xxxii) Notice(s) of checks paid against uncollected funds; and/or

(xxxiii) alerts of potentially unusual, irregular, improper, and/or suspicious account activity

which were generated or received in the ordinary course of the Bank's business, were part of its standard business practice of investigating potentially fraudulent activity, or were otherwise

7

discoverable as supporting documentation underlying (but not referencing) a suspicious activity report relating to the Account(s).

20. The phrase "**USA Patriot Act**" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001), and any implementing regulations of the USA PATRIOT Act.

### III. DOCUMENTS REQUESTED

**IMPORTANT-(REFER TO ABOVE DEFINITIONS FOR MEANING OF TERMS).**

1. Any and all Document(s), Communication(s), Electronic Data, and/or ESI by and between the Bank and Debtor concerning, referring to, relating to, reflecting, and/or evidencing the Debtor during the Relevant Period.

2. Any and all Document(s), Communication(s), Electronic Data, and/or ESI by and between the Bank and Debtor concerning, referring to, relating to, reflecting, and/or evidencing the Account(s) during the Relevant Period.

3. Any and all Document(s), Communication(s), Electronic Data, and/or ESI by and between the Bank and any Person concerning, referring to, relating to, reflecting, and/or evidencing the Debtor during the Relevant Period.

4. Any and all Document(s), Communication(s), Electronic Data, and/or ESI by and between the Bank and any Person concerning, referring to, relating to, reflecting, and/or evidencing the Debtor during the Relevant Period.

5. Any and all Due Diligence Materials for the Account(s) during the Relevant Period.

6. Any and all Document(s), Communication(s), Electronic Data, and/or ESI concerning, referring to, relating to, reflecting, and/or evidencing the Bank's review, analysis, and/or investigation of activity in the Account(s), regardless of whether such activity was characterized as, or determined to be, unusual, irregular, improper, questionable, illicit, and/or suspicious.

7. Any and all Document(s), Communication(s), Electronic Data, and/or ESI relative to the Account(s) that were generated in the ordinary course of business to include, but not be limited to, all computer generated reports wherein any of the Account(s) was/were identified as having suspicious and/or unusual, irregular or improper account activity.

8. Any and all Document(s), Communication(s), Electronic Data, and/or ESI relating to any investigation or inquiry by the Bank or its agents of the Debtor and/or any of the Account(s).

8

161279599.1

9. Any and all Document(s), Communication(s), Electronic Data, and/or ESI which would evidence any response to the investigation and the findings, or observation, notes of any such investigation relative to account activity of the Debtor, including suspicious activity.

10. Any and all Document(s), Communication(s), Electronic Data, and/or ESI which would evidence any follow-up concerning suspicious activity to include any written explanations which the Debtor may have given to the Bank regarding the Account(s) activity (to include any business activity).

11. Any and all Document(s), Communication(s), Electronic Data, and/or ESI furnished by or on behalf of the Debtor to the Bank to support any statements made by the Debtor to explain his account activity, including suspicious activity.

12. Any and all Document(s), Communication(s), Electronic Data, and/or ESI obtained by the Bank from any source whatsoever relating to any investigation the Bank may have made into the account activity of the Debtor, including suspicious activity.

13. Any and all internal and external data, account information and history, reports, transactional documentation, research logs, case notes, and investigation summaries relating to the Debtor during the Relevant Period.

14. Any and all internal and external data, account information and history, reports, transactional documentation, research logs, case notes, and investigation summaries relating to the Account(s) during the Relevant Period.

15. Any and all Report(s) generated, triggered, alerted, issued and/or produced for any of the Account(s) during the Relevant Period.

16. Any and all Report(s) generated, triggered, alerted, issued and/or produced which concern, refer to, relate to, reflect, and/or evidence the Debtor during the Relevant Period.

17. Any and all alert(s) and/or Report(s) that were triggered or signaled relating to the Debtor including, but not limited to, Searchspace, 314(a) and (b), Matricular ID, Currency Transaction Report, Subpoena, World Tracker, Stored Value Card, PYC, EDD, SIR, International, Brokerage, Law Enforcement Referrals, OFAC, and media articles during the Relevant Period.

18. Any and all alert(s) and/or Report(s) that were triggered or signaled relating to the Account(s) including, but not limited to, Searchspace, 314(a) and (b), Matricular ID, Currency Transaction Report, Subpoena, World Tracker, Stored Value Card, PYC, EDD, SIR, International, Brokerage, Law Enforcement Referrals, OFAC, and media articles during the Relevant Period.

19. Any and all lookback investigations relating to the Debtor including, but not limited to, Bank Secrecy Act, AML, or other investigations.

9

161279599.1

20. Any and all lookback investigations relating to the Account(s) including, but not limited to, Bank Secrecy Act, AML, or other investigations.

21. Any and all Document(s), Communication(s), Electronic Data, and/or ESI concerning, referring to, relating to, reflecting, and/or evidencing Loans (including but, not limited to, negotiation(s), underwriting, documentation, administration, monitoring, collateralization, advances, repayments, forbearance agreement(s), and/or defaults declared on any Loan(s) during the Relevant Period.

22. Any and all litigation holds or preservation letters received by the Bank from any Person concerning, referring to, relating to, reflecting, and/or evidencing the Debtor and/or the Account(s) during the Relevant Period.

## IV. DEPOSITION TOPICS

**IMPORTANT-(REFER TO ABOVE DEFINITIONS FOR MEANING OF TERMS).**

The Bank shall designate and produce for examination one or more of its officers, directors, managing agents, or other persons who are knowledgeable about and consent to testify on its behalf concerning the following subject matters:

1. The relationship, and Communication(s), between the Bank and Debtor.

2. Activity in the Account(s).

3. Monitoring of activity in the Account(s).

4. Report(s) generated, triggered, alerted, issued and/or produced for any of the Account(s).

5. The review, analysis, and/or investigation of activity in the Account(s) regardless of whether such activity was characterized as, or determined to be, unusual, irregular, improper, questionable, illicit, and/or suspicious.

6. Internal Bank Communication(s) and Report(s) concerning the Account(s), the Debtor, and/or the obligor(s) for the Loan(s) including, but not limited to, the identity of the individual(s) who prepared the Communication(s) and Report(s), the identity of the individual(s) who received the Communication(s) and Report(s), and what (if any) action(s) were taken by each person, Third Party(ies), and/or the Bank in response to the Communication(s) and/or Report(s).

7. The identities of all Bank employees who were responsible for opening, monitoring, administering, and/or closing the Account(s).

8. All work performed by the Bank's Special Situations Team or Special Situations Group regarding the Debtor and/or the Account(s).

161279599.1

9. The Bank's Policies/Procedures with regard to opening of accounts including the Account(s).

10. The Bank's Policies/Procedures with regard to KYC (Know-Your-Customer), CDD (Customer Due Diligence), EDD (Enhanced Due Diligence), and/or CIP (Customer Identification Program) including, but not limited to, any Report(s) or alerts generated, triggered, alerted, issued, and/or produced in connection therewith.

11. The Bank's Policies/Procedures with regard to special procedures for the Debtor and/or Account(s).

12. All profiles of accounts, customers, and correspondent activity based on common business used to detect unusual behavior built into the Bank's "Know Your Customer" report system.

13. The Bank's Policies/Procedures with regard to establishing and updating risk profiles of bank customers at account opening and periodically thereafter.

14. The Bank's Policies/Procedures with regard to the identification/detection and/or review/analysis/investigation/evaluation of unusual, irregular, improper, questionable, illicit, and/or suspicious account activity(ies).

15. The Bank's Policies/Procedures with regard to monitoring of activity in accounts including the Account(s).

16. The Bank's Policies/Procedures with regard to internal databases, including, but not limited to, ICMS – Case Management Tool, Newton – Wire Transaction Storage Database, eDIV, Emerald – Live Account Data, and Corporate Image Workstation.

17. The Bank's Policies/Procedures with regard to any software, system(s), and/or monitoring tool(s) utilized to monitor and/or detect unusual, irregular, improper, questionable, illicit, and/or suspicious account activity(ies).

18. All triggers, parameters or profiles built into the Bank's account monitoring software/systems for the purpose of identifying or detecting unusual, irregular, improper, questionable, illicit, and/or suspicious account activity(ies).

19. Any parameters, statistical variance thresholds and business rules used to flag unusual, irregular, improper, questionable, illicit, or suspicious account activity(ies) and/or daily, weekly, and monthly profiles built into the Bank's monitoring tool(s), including, but not limited to, the Bank's Searchspace, or any other identification or detection system(s) and/or alert system(s) or program(s).

20. The Bank's Policies/Procedures with regard to any monitoring tool including, but not limited to, the Bank's Searchspace and/or detection system(s) and/or alert system(s) or program(s) and any flags, electronic alerts, summary reports, or Report(s).

11

21. The Bank's Policies/Procedures with regard to loss detection and/or loss prevention including, but not limited to, the Bank's detection system(s) and/or alert system(s) or program(s), and any flags, electronic alerts, summary reports, or Report(s).

22. Any parameters and/or profiles built into the Bank's loss detection and/or loss prevention, software, system(s), and/or monitoring tools.

23. The Bank's Policies/Procedures with regard to fraud detection and/or fraud prevention including, but not limited to, the Bank's fraud detection system(s) and/or fraud alert system(s) or program(s), and any flags, electronic alerts, summary reports, or Report(s).

24. Any parameters and/or profiles built into the Bank's fraud detection and/or fraud prevention, software, system(s), and/or monitoring tools.

25. The Bank's Policies/Procedures with regard to any setting and/or the changing of vendor settings for thresholds for events or alerts in any electronic system including, but not limited to, Searchspace and KYC report and alert systems regarding potentially unusual, irregular, improper, questionable, illicit, or suspicious account activity(ies).

26. The Bank's Policies/Procedures with regard to Suspicious Internal Referrals including, but not limited to, any daily or weekly reports completed by an employee or customer and any resulting review(s), analysis(ses), and/or investigation(s).

27. All alert types and/or Report(s) that were triggered or signaled relating to the Debtor and/or the Account(s) including, but not limited to, Searchspace, 314(a) and (b), Matricular ID, Currency Transaction Report, Subpoena, World Tracker, Stored Value Card, PYC, EDD, SIR, International, Brokerage, Law Enforcement Referrals, OFAC, and Media articles.

28. The Bank's Policies/Procedures with regard to Currency Risk Management including, but not limited to, referrals.

29. The Bank's Policies/Procedures with regard to escalating or reporting unusual, irregular, improper, questionable, illicit, and/or suspicious activity(ies) in accounts including the Account(s).

30. All internal and external data, account information and history, reports, transactional documentation, research logs, case notes, and investigation summaries relating to the Debtor, Account(s), and/or Loan(s).

31. The Bank's Policies/Procedures with regard to Currency Transaction Reports.

32. The Bank's Policies/Procedures with regard to closure of accounts including, but not limited to, risk levels, Hot List database, and Customer Data Corporation check, Regulation O database, and Bridger technology.

33. The Bank's Policies/Procedures with regard to loans or extensions of credit including, but not limited to, (i) application(s); (ii) negotiation(s); (iii) underwriting; (iv) documentation; (v) collateralization; (vi) monitoring or administration; (vii) defaults; (viii) forbearance; and/or (ix) institution of suit(s) to collect and/or proceed against collateral.

34. All lookback investigations relating to the Debtor, Account(s), and/or Loan(s) including, but not limited to, Bank Secrecy Act, AML, or other investigations.

35. Negotiation(s), underwriting, documentation, administration, monitoring, collateralization, advances, repayments, Forbearance Agreement(s), and/or defaults declared which concern, refer to, relate to, reflect, and/or evidence the Loan(s).

36. Closure of any of the Account(s).

37. The Bank's Policies/Procedures with respect to VIP customers.

13

161279599.1